A. B. MOON, *Appellant,* v. GRAHAM L. WILSON, *Appellee.*

En Banc.

Opinion filed September 11, 1930.

*Leitner & Leitner,* for Appellant.

*Sheppard & West,* for Appellee.

ANDREWS, Commissioner:

The appellant, A. B. Moon, as complainant below, filed his bill in chancery against appellee, Graham L. Wilson, as defendant below, for the purpose of foreclosing a statutory lien for labor and material furnished in the construction of a house upon defendant's property in Lee County, Florida. Attached to the bill of complaint is the written contract of construction in which, among other things, complainant agreed to furnish all material and labor for the remodeling of the old house and complete new building to correspond with the submitted drawings and specifications; all for the sum of $12,800.00. All materials and workmanship used in the construction were guaranteed by complainant to be first quality and he agreed "to complete" the buildings to defendant's "entire satisfaction within a period of nine weeks."

The terms of payment for the construction were as follows: "It is hereby understood when frame construction is built and roof raised, I am to receive one-third of the contract price, and when the building is entirely inclosed another one-third and the final third is to be paid upon final completion and satisfactory inspection by the owner."

The bill of complaint alleges that complainant performed the labor and furnished the material and "had almost complied with said contract by building said house and supplying said extras" when on or about the 18th day of September, 1926, there came a great storm and the "said house that he had constructed was almost wrecked and almost destroyed," that nevertheless he started in earnest to reconstruct the said house according to the original plans and extras, "having in mind that the work of placing the house in the condition it was before the storm would be charged to the defendant;" that the work under the contract "that had not been done was to be done by orator in compliance

with an under the terms of said contract, but defendant told orator that has services were dispensed with and that he could not go on with the said work.''

The bill further alleges that defendant paid complainant ''until there now remains due to him the sum of $4,805.50, and he is entitled to a lien'' upon the said property for the said sum.

It is further alleged that complainant ''is claiming the amount that is actually due him for the work and labor furnished and bestowed upon said building and premises prior to the time he was ordered to cease,'' and not damages for breach of contract.

A demurrer was interposed by the defendant stating that the allegations of the bill of complaint are so vague, indefinite and uncertain that they do not apprise the defendant of the relief sought. The chancellor sustained the demurrer and the complainant having declined to amend the bill was dismissed. The said rulings of the chancellor are here for review upon appeal of complainant.

Under the statutes of this State, liens prior in dignity to all others accruing thereafter exist in favor of persons performing labor or furnishing material on the construction of any building or additions thereto and the land upon which it stands. Section 5349, 5350, 5353, Comp. Gen. Laws of Florida, 1927.

The contract for the construction provides that complainant was to furnish all material and labor for remodeling and completing the building for the sum of $12,800.00, to be paid one-third ''when frame construction is built and roofing raised,'' and one-third ''when building is entirely enclosed,'' and the ''final third is to be paid upon final completion and satisfactory inspection by owner.''

The above sets forth the conditions upon which each third of the construction was to be paid for. The bill of

complaint sets forth that there were some extras, but does not state what they were or the cost. The bill further alleges that there remains due to complainant $4,805.50, which appears to be the last payment or one-third of the contract price plus any extras. The bill of complaint shows that the building was not completed within the "period of nine weeks" as specified by the contract entered into April 15, 1926, which would require the building to have been completed about June 22, 1926. It is further shown that the building was not completed on September 18, 1926, three months thereafter, when the storm almost destroyed it. If the construction had been completed before or at the time of the storm, the defendant would be liable for the last one-third payment of the contract, whether the damage or destruction was caused by an act of Providence or not. Until the improvements were "completed" to "defendant's entire satisfaction" the last payment was not due and payable.

The contract for the construction was, in the language of the complainant, in the form of a letter or bid addressed to and accepted by defendant.

There is a distinction between cases in which a contract *can be performed,* notwithstanding the destruction of the subject-matter of the contract by an inevitable accident, and cases in which the performance of the contract becomes *impossible* by the intervention of causes which human agencies cannot prevent. An inevitable accident will not excuse the performance of a contract where its essential purposes are still capable of substantial performance though literal performance is impossible. 6 R. C. L. 1002, Section 367; 52 R. A. 826 and notes.

"The loss caused by the destruction by storm of a building partly finished falls upon the one who has undertaken to complete and deliver it to the owner

for a stipulated price." Milske v. Steiner, Mantel Co., 103 Md. 235, 63 Atl. R. 471, 5 L. R. A. (N. S.) 1105.

It has been held that even though the contract is an entire one, if payment therefor is to be made in installments, as the work progresses, the owner's obligation to pay such sums becomes fixed absolute when the structure reaches the required stage, and that, therefore, the builder is entitled to recover such payments as are due at the time the structure is destroyed. 9 C. J. 806-7, Secs. 144-145; 3 Elliott on Contracts, Secs. 1908-1909; Addison's Law of Contracts, 11th Edition, 884.

The last above authority states the general rule as follows:

"If the contract price of the building is to be paid by installments on the completion of certain specified portions of the work, each installment becomes a debt due to the builder, as the particular portion specified is completed; and, if the house is destroyed by accident, the employer would be bound to pay the instalments then due, but would not be responsible for the intermediate work and labor and materials." See also, 3 Elliott on Contracts, Sec. 1909; Cutcliff v. McAnally, 88 Ala. 507, 7 So. R. 331; 22 L. R. A. (N. S.) 364.

With reference to extras under such agreement Addison's Law of Contracts, page 886, says:

"If work has been agreed to be done, and materials supplied under a building contract for certain estimated prices, and there has subsequently been a deviation from the original plan by consent of the parties, the contract is not on that account excluded, but is to

be the rule of payment, as far as the contract can be traced to have been followed, and the excess only is to be paid for according to the usual rates of charging." See also Clark v. Collier, 100 Calif. 256, 34 Pac. R. 677.

The case of Richardson v. Shaw, 1 Mo. App. 234, is exactly in point: One installment was to be paid when the frame work was up, a second when the building was enclosed and a third when ready for plaster. The building was destroyed by a storm "when almost enclosed." It was held that contractor was entitled to first instalment, but could not recover for work and material furnished between the time the frame work was up and the storm. See also 22 L. R. A. (N. S.) 364.

To excuse the nonperformance of a contract on such ground there must, in the absence of statutory provisions, be no admixture of negligence or want of diligence, judgment or skill on the part of the promisor. An act of God will not excuse the promisee from performance of his part of the contract in making payments where the promisor fully performs his contract of construction; nor excuse the failure to perform a contract so as to give a person the right to recover upon it without performance, although for the purpose of defense, nonperformance might be thereby excused. 6 R. C. L., 1003, Section 367, and notes; Elliott on Contracts, Sec. 1908.

The general rule also seems to be that where the contract provides for the furnishing by the owner a part or all of the material or labor, upon the destruction of a building in the course of construction by storm or other unforeseen calamity, the loss must fall upon the owner of the property. See 5 L. R. A. (N. S.) 1109-10, notes and cases cited therein.

The rule is somewhat different where the contract is to repair and remodel an old building. The contract attached to the bill of complaint indicates the purpose to be "remod-

eling of the present house * . * * and erect and complete new buildings to correspond with plan submitted.'' The bill of complaint is silent as to remodeling old building.

The continued existence of the old building is an implied condition of the contract, and the destruction of such part may relieve the contractor from liability for any damage as to such portion and place it upon the owner. In the present case complainant builder was to furnish all labor and material. 3 Elliott on Contracts, 62, Sec. 1908, notes.

The question arises: Who must bear the loss caused by a partial destruction of a building in process of erection?

This question is not without difficulty and depends largely upon the obligations assumed by each party to the contract. It is a well-settled rule of law that if one contracts absolutely and unqualifiedly to do something possible to be done, he must make his promise good unless his performance be rendered actually impossible by the act of God, the law, or the other party. If unexpected impediments lie in the way of the performance of the contract and a loss must result, it leaves the loss where the agreement of the parties has put it. The parties must themselves guard against unexpected contingencies by express exceptions in their contracts. If they have made no provision for a dispensation, the law gives none; it will not insert, for the benefit of one or the other of the parties, by construction, an exception which they failed, either by design or neglect, to insert in their agreement. A contract fairly made will not be annulled by an interpolation of something which the parties themselves have not stipulated. See 5 L. R. A. (N. S.) 1105 and notes.

As to the last third of the construction named in the contract, it appears from the bill, that it had not been completed. Therefore the law will leave both parties where the storm found them and the bill of complaint having

alleged that the work of placing the house in the condition it was before the storm would be charged to the defendant, fails to allege grounds sufficient to authorize the relief asked for, and the chancellor committed no error in sustaining the demurrer to the bill of complaint and dismissing same, the plaintiff declining to plead further.

Affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the order of the court below should be, and the same is hereby, affirmed.

TERRELL, C. J., and WHITFIELD, STRUM and BUFORD, J. J., concur.