101 So.2d 906 (1958)
ENID CORPORATION, a Florida corporation; Trinity Corporation, a Florida corporation; and The Mackle Company, Inc., Appellants,
v.
H.L. MILLS and Kathryn Mills, t/d/b/a H.L. Mills Construction Company, Appellees.
No. 57-200.
District Court of Appeal of Florida. Third District.
March 13, 1958.
Rehearing Denied April 30, 1958.
*907 Williams, Salomon & Katz and Richard P. Kenney, Miami, for appellants.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellees.
PEARSON, Judge.
The appellants were defendants in an action brought in equity by the appellees to enforce a lien for the amount alleged to be due them for the construction of streets in two subdivisions owned by defendants-appellants. The defendants filed a counter-claim based upon allegations of improper construction. The cause was referred to a special master who conducted extensive hearings and filed a comprehensive report. The plaintiff-appellees filed exceptions to the special master's report, the appellants did not. The chancellor stated in the final decree that: "The master's finding of fact are adopted and confirmed, with the following additional findings of fact as made by the court." Thereafter followed nine paragraphs containing additional findings from the evidence. It should be noted at this point that the plaintiff-appellees had moved the court for a re-reference of the cause to accomplish the findings as to the additional issues of fact which they considered necessary for a proper determination of the issues of law in the case. The defendants-appellants did not consider such a re-reference necessary and moved for a confirmation of the report, both as to the findings of fact and the conclusions of law contained therein. The chancellor denied the motion for a re-reference and made his own additional findings of fact from the record before him.
The chancellor also held that upon the basis of the facts as found by the special master and as supplemented by the chancellor that the special master had misapplied the law to the factual situation. Therein lies the basis for all of the contentions of the appellants upon this appeal. In essence the appellants seek here a re-establishment of the conclusions of law reached by the special master. We have been presented with thirty-three assignments of error; all of which are directed to findings made by *908 the chancellor and specific portions of his decree as based upon these findings and those of the special master. The appellant does not assign as error the procedure followed. As stated by appellants, the points involved upon this appeal call for a review of only the conclusions of law reached by the chancellor.
We shall therefore restate the facts, essential to an understanding of the case, from the findings of both the special master and the chancellor.
The plaintiffs and defendants entered into an oral contract whereby plaintiffs were to build certain roads in Biscayne Key Estates, a subdivision. These roads were to be built to a grade set by stakes, which were placed in the ground by defendants' engineer. The defendants continually inspected the work from day to day and at all times had control of the elevation to which the finished roads would be built. The stakes were set for a five foot elevation of the completed roads. Each party knew of the character of the subsoil, both at the time of entering into the work and at the time the work was being done; each was fully aware of the possibility that roads built upon such soil might settle slightly. The roads were inspected during progress of the work by a Dade County inspector who was principally concerned with the depth of rock and with the surfacing. The roads were approved in each instance. They were completed according to Dade County specifications and at the elevation set, demanded and insisted upon by the defendants.
The plaintiffs were fearful that the roads might settle and wanted to build them higher than the elevation set by the defendants and warned the defendants that they might settle. Nevertheless, the defendants would not permit the plaintiffs to build the roads higher. A higher road would have required additional fill upon the lots. If the defendants had permitted the plaintiffs to initially build the roads high enough to allow for possible settlement, then it would not have been necessary to raise the roads later.
Soon after the roads were completed, there was a slight settlement in some places; so that portions of the roads were under the 5 foot elevation. The plaintiffs refused to raise the portions which were under five feet as requested by the defendants. With this factual background established, the appellants present the question:
"Did the court err in finding as a matter of law that the contractor (plaintiffs) did not have to bear the expense of bringing the roads up to the required elevation, where the contractor had no provision in his contract for such possibility notwithstanding his knowledge of the condition of the land?"
It is suggested that all responsibility for subsidence has been determined to be upon the contractor by Poranski v. Millings, Fla. 1955, 82 So.2d 675. The court in that case was dealing with subsidence on filled land, with a resulting deficiency in fill. It was determined that the deficiency was caused in part by the owner's failure to provide adequate stakes as required by the contract and in part by the contractor's failure to foresee and allow for subsidence. The additional fact, which we have in the instant case, of a willingness on the part of the contractor to provide an additional elevation to compensate for future subsidence is not present in the Poranski case. In view of the conflicting testimony the court had a right to believe the roads were constructed in accordance with the defendants' directions and against plaintiffs' admonitions that they might subside. In such a situation the defendants assumed the risk of subsidence. See Glass v. Wiesner, 172 Kan. 133, 238 P.2d 712. If the court had not found that the defendants were fully aware of the condition of the subgrade both before the oral contract and when poor conditions were encountered, we would have been presented with a different situation.
An unexpected impediment to the performance of a contract will not relieve *909 a party from his contractual obligations, unless his performance is rendered impossible by an act of God. See Moon v. Wilson, 100 Fla. 791, 130 So. 25. It is apparent from the statement of the facts in the instant case that we are not dealing with an unexpected condition.
The second of appellants' two points on appeal presents a question concerning plaintiffs' performance in a second subdivision. As to this portion of the case the Court found:
"With regard to the Tropical Isle Homes, First Addition, which the plaintiffs refused to continue working on, after the defendants attempted to foist on them the cost of raising the roads as above outlined, since the defendants were attempting to incorporate in the construction agreement a proviso that was not in fact present, the plaintiffs were justified in refusing to continue until such time as the terms and conditions upon which plaintiffs would be paid were fully determined. Apparently there was no meeting of the minds on this latter contract, and therefore no contract."
Much of the dispute in this case concerns just what were the terms and conditions of the original oral contract. When the work was almost completed on the original contract, the defendants demanded that certain portions of the roads be rebuilt in accordance with their interpretation of the original oral contract. It is suggested that the terms of the second employment with respect to Tropical Isle Homes were the same terms and conditions as those of the original contract. It therefore becomes apparent, that since each party was contending for a different interpretation of the original oral contract, that there was no agreement upon the second contract. A "meeting of the minds" is essential for the existence of any contract. Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92, 94. When the fact became apparent that there was no meeting of the minds as to the terms and conditions of the second employment, neither party was obligated to continue. The court's failure to assess damages for plaintiffs' refusal to continue under the second employment was not error.
Affirmed.
CARROLL, CHAS., C.J., and HORTON, J., concur.