HERSEY, Judge.
Stella Bloom, as personal representative of the estate of Joseph Bloom, filed a complaint against appellees to require continuation of certain payments pursuant to a contract between her late husband and appel-lees. The trial court granted a motion to dismiss for failure to state a cause of action and, in a final judgment, dismissed the complaint with prejudice. That judgment is the subject of this appeal.
Joseph Bloom sold all of the corporate stock of K & K Pipe and Supply Co., Inc. to Louis Barrish. Pursuant to a side agreement between the seller, the buyer and the corporation, the seller, Bloom, was to receive weekly payments of $48.08 over a ten year period on certain conditions. The contract requirements were as follows:
1. (a) BLOOM agrees not to directly or indirectly operate or be employed by or be an officer, director or agent, whether for compensation or not, of a plumbing or pipe supply business, or any related business, for a period of ten (10) years and two (2) months (to and through 1/1/87) within all of Palm Beach County, Florida. BLOOM shall neither directly or indirectly compete in any way or hinder K & K herein, nor shall BLOOM sell any products to the current customers of K & K, be it plumbing supplies or any other related supplies whatsoever.
(b) BLOOM shall not at any time or in any manner either directly or indirectly, divulge, disclose or communicate to any person, firm or corporation in any manner whatsoever any information concerning any matters effecting or relating to the business of K & K, including without limiting the generality of the foregoing, any of its customers, the prices it obtains or has obtained from the sale of any of its items of stock or inventory, or any important and material information which would effect the successful conduct of the business of K & K.
(c) In consideration for the above, K & K shall pay to BLOOM the. sum of $2,500.00 per year, payable weekly commencing February 1, 1977 in the amount of $48.08 per week, and continuing on the 1st day of each week thereafter for so long as BLOOM is not in violation of any of the provisions of this Agreement; provided, however, that said covenant and payments shall terminate, if not before, on January 1, 1987. That as a condition for the payments provided herein, BLOOM agrees to answer any questions and respond to any request for information from K & K which relate to the business of K & K and/or in connection *772 with any determination or investigation of whether or not BLOOM is in violation of the above-described covenant not to compete.
The parties each fulfilled their obligations under the contract for approximately one year, until Joseph Bloom died. The corporation and Barrish refused to make further payments on the basis that the contract was one for personal services and that the obligation to make payments was therefore extinguished by the death of Bloom.
Appellant contends that she, in her individual capacity, was a close business associate of Joseph Bloom and therefore stands in his shoes for purposes of measuring his continuing ability to perform the covenants imposed upon him by the contract. As an example, appellant postulates that an injunction would lie, at the behest of Barrish or the corporation, if she were to engage in a business which was in competition with the corporation. She argues that since the negative covenant against competition could thus be enforced despite the death of seller, Bloom, that the contract remains viable and therefore enforceable against the corporation.
The difficulty with appellant’s position and the weakness of her argument lies in the fact that the cases upon which she relies involve a conspiracy or some form of plan whereby the individual bound by the covenant not to compete is either directly or indirectly competing in violation of his covenant. This is true of West Shore Restaurant Corp. v. Turk, 101 So.2d 123 (Fla. 1958) where the court determined that a covenant not to compete was violated by the very individual bound by that covenant. It is also true of Wilson v. Pigue, 10 So.2d 561 (Fla. 1942), in which the court again found a direct violation. Appellant relies heavily on Yoo Hoo of Florida Corp. v. Catroneo, 175 So.2d 220 (Fla.3d DCA 1965) in support of her position that a third party not in privity with the contracting parties may be enjoined from using knowledge gained from the party who has covenanted not to compete to establish a business which in fact does compete. However, that case involved a complaint in which it was alleged that:
Steve and Lucy Catroneo owned and operated a business in Dade County, Florida, which distributed a non-carbonated beverage known as “Yoo Hoo” and that the Catroneos sold the business, including the good will, to plaintiff; that the defendant, Steve Catroneo, was retained as an employee in a position of trust, and thereafter conspired with Lucy Catroneo to injure the business by soliciting employees of the plaintiff to work for him in a new, competing business; that the Ca-troneos used plaintiff’s facilities, without permission, to bottle their own beverage; that the Catroneos used confidential business information acquired by the position of trust to injure the business and solicited the distributors and customers of the plaintiff; that the Catroneos had organized a new business to sell a chocolate beverage named “Zippy” and that they were soliciting the customers and accounts which were the basis of the good will sold by the Catroneos to the plaintiff. Id. at 221.
Clearly in Catroneo there were many allegations of direct and serious violations of that portion of the contract transferring the good will of the business to the purchaser. Those acting in concert with the contracting party would most certainly be subject to injunction to thwart further development of the conspiracy. We do not have a similar situation in the present case.
It is true that if appellees proved that Mr. Bloom was providing information to Mrs. Bloom who consequently engaged in competitive activity a court could enjoin that activity. What would be enjoined is not the direct violation of the covenant by Mrs. Bloom, but rather the indirect violation of the covenant being perpetrated by Mr. Bloom. As the foregoing cases illustrate, absent some element of conspiracy there is no basis for the enforcement of a negative covenant against an individual not a party to the contract. That being so, there is no mutuality and, at least as to the negative covenants, no viable contract.
*773 Further, the appropriate test to determine if a contract was intended to survive the death of one of the contracting parties where the contract is otherwise silent on the issue, is whether the personal representative may perform as fully and as well as the decedent might have. In Frankel v. Bernstein, 334 So.2d 37 (Fla.3d DCA 1976) the applicable law was stated in the following language:
[W]here a contract is one which, according to its provisions and purposes, may not be as well and fully performed by the personal representative of a contracting party as by the decedent, it would be illogical to assume, in the absence of a provision to the contrary in the contract, that the parties should not have anticipated that upon death of such party during pendency of the contract (or as here prior to its inception), the representative of the deceased party need not perform, such as would result where performance is rendered actually impossible by an act of God. See Moon v. Wilson, 100 Fla. 791, 130 So. 25; Enid Corporation v. Mills, Fla.App. 1958, 101 So.2d 906.
In the instant case, the affirmative covenant required Mr. Bloom to “answer any questions and respond to any request for information from K & K. .. . ” This covenant became impossible to enforce because of Mr. Bloom’s death.
Since the contract contemplated only the personal performance of the decedent and prohibited only the decedent from performing certain actions, the purpose of the contract was frustrated by the death of Mr. Bloom. It therefore became unenforceable by either party and Mrs. Bloom could not state a cause of action based upon the contract. Accordingly, we affirm the trial court’s order granting the motion to dismiss with prejudice.
AFFIRMED.
DOWNEY and ANSTEAD, JJ., concur.