450 So.2d 277 (1984)
CENTRAL PROPERTIES, INC., Appellant,
v.
William H. ROBBINSON, Trustee, and V. Randolph Delk, Trustee, and Westside, Inc., Appellees.
No. AS-289.
District Court of Appeal of Florida, First District.
May 2, 1984.
Rehearing Denied May 31, 1984.
*278 James D. Easley, Niceville, for appellant.
E. Allan Ramey, DeFuniak Springs, for appellees.
ZEHMER, Judge.
Central Properties, Inc., appeals an adverse judgment denying specific performance of a contract purporting to grant a right of first refusal to purchase "a water and sewer system." With some modification, the trial court's order is affirmed.
In August 1977, Central Properties, Inc., and the appellees, William H. Robbinson, as trustee, V. Randolph Delk, as trustee, and Westside, Inc., a real estate development company, entered into an option agreement whereby Central Properties could purchase sixty acres of land in Walton County from Westside. As part of this agreement, Central Properties received a "right of first refusal ... to purchase the water and sewer system on the remaining property of [Westside, Inc.] under the terms and conditions being sold to any other party." The agreement also gave Central Properties thirty days to make an election after receiving written notice of any such proposed sale from Westside. Central Properties exercised the option and purchased the sixty acres pursuant to the agreement.
Thereafter, Westside's owners created another corporation, Westside Utilities, Inc., to own and operate the water and sewer system, and transferred the system to that corporation. The shareholders of Westside Utilities and Westside, Inc., with *279 one exception, were the same. On this appeal, the parties do not dispute the trial court's ruling that the right of first refusal in the original option agreement between Central Properties and Westside survived this transfer of the system and became binding on Westside Utilities and its owners.
One of the principal developments on Westside's property was a condominium known as Sand Cliffs. In 1981, the condominium was the principal user of the water and sewer system. During April and May of that year, the owners of Westside Utilities, Inc., and the Sand Cliffs Owners Association discussed the transfer of the system to the Association. On May 8, 1981, the Association sent a letter to William H. Robbinson, a stockholder of and spokesman for Westside Utilities, in which the Association confirmed its proposal "to take over the water and sewer systems now being operated by Westside Utilities, Inc.," by acquiring all the capital stock of Westside Utilities, to be held in the name of the Association or a separate corporation to be organized by the Association. At the time of that letter, several essential terms of the proposal remained open for further negotiation and agreement. For example, both parties recognized that the system was in poor repair, and the Association's May 8 letter recited that:
Our Association would promptly transfer funds in an amount of not less than $25,000 to Westside to be used for capital improvements and maintenance of the system so that it would be in good working condition capable of providing reliable and satisfactory service. The cost of doing this cannot be determined in advance with a high degree of accuracy. Our Association will, however, commit to provide additional funds as needed for such purposes up to an amount of not less than $50,000. Among the work anticipated is the enclosure of controls and other components in suitable buildings for protection against environmental damage, etc., the drilling of an additional well so that both reliability and quality of water supply is improved, catching up with long overdue maintenance such as sandblasting and repainting tanks and the like, replacement of some components, acquisition of one or more standby pumps and whatever else it takes to put both systems into good working order. (Emphasis added.)
Thus, the Association was committing to expend, without apparent limitation, "not less than $50,000" to correct certain deficiencies and to do "whatever else it takes to put both systems in good working order." Also, the letter refers to unresolved commitments owed by Westside Utilities to Central Properties regarding water and sewer service for the development of the property Central Properties had purchased and to other details that remained to be finalized, all of which would have to be set forth in the closing documents. The May 8 letter concluded with the statement:
It is my understanding that you will communicate with Mr. Bragg so as to determine if he will waive the 30 day period and let us proceed with the foregoing as rapidly as possible.
In a letter dated May 12, 1981, Robbinson sent the Association's letter to Jay Bragg, president of Central Properties, offering it the right to purchase the water and sewer system under the terms and conditions set forth in Sand Cliffs' May 8 letter. Robbinson also stated to Bragg that:
If you know now that you do not have an interest in purchasing these systems under these terms and conditions and would agree to waive the 30 day period or release it, it would assist all concerned in getting the matter to an expeditious conclusion. We are anxious, as we know you are, to get this matter into a permanent solution, and we will appreciate your cooperation in this regard.
Apparently, both Westside Utilities and the Association believed that Central Properties would not insist upon exercising its right of first refusal and wanted to confirm that belief in writing.
*280 In a letter to Robbinson dated May 15, 1981, Central Properties, through its attorney, James E. Moore, stated that it would relinquish its right of first refusal if Westside Utilities would sell the water and sewer system to John V. Smith Water Company. That letter contained no reference to Robbinson's May 12 letter or to the Sand Cliffs proposal. Robbinson did not respond to Moore's letter of May 15. On May 22, 1981, Moore wrote a second letter to Robbinson, informing him that Central Properties was electing to exercise its right of first refusal to purchase the water and sewer system pursuant to the terms of the Sand Cliffs offer.
Sand Cliffs and the shareholders of Westside Utilities took no further steps to consummate the proposed transaction described in their letter of May 8. Rather, on June 9, 1981, Robbinson, on behalf of Westside Utilities, wrote to Central Properties that Sand Cliffs Owners Association had withdrawn the proposal described in their May 8 letter and that Westside was withdrawing the proposal in its May 12 letter. Robbinson's letter further recited:
In reviewing the matter we do not believe that paragraph 11 of the original purchase agreement is activated (or has any validity) as far as the proposal received from Sand Cliffs Owners Association is concerned. We were under the impression that Central Properties, Inc., was in agreement with the Sand Cliffs Owners Association taking over the operation of the systems and we wrote our letter of May 12 as a matter of clearing a technicality.
On June 22, 1981, Central Properties responded to the June 9 letter, taking the position "that it has exercised its option to purchase under the terms as specified in the letter of May 8, 1981," and demanding that the transaction be closed with Central Properties on the terms set forth in the Association's May 8 letter.
On July 14, 1981, Westside Utilities and Sand Cliffs executed a "management agreement" and a "lease agreement" providing that Sand Cliffs would lease and manage the water and sewer system. The utility system is presently being managed and operated under the terms of these agreements. On July 28, Sand Cliffs also acquired an option to purchase the capital stock of Westside Utilities, but has not attempted to exercise it.
Central Properties instituted this litigation to obtain specific performance of the contract to acquire the water and sewer system allegedly created by its acceptance of the terms of the proposal contained in appellees' letters of May 8 and 12, together with damages for appellee's failure to perform the contract. William H. Robbinson and Randolph Delk, as trustees, Westside, Inc., and Westside Utilities, Inc., have been named as defendants by Central Properties. Sand Cliffs Owners Association has become a defendant by intervention. After a full trial of the issues, the circuit court entered its order and final judgment ruling that there was "no meeting of minds concerning the proposal set out in Mr. William Robbinson's letter of May 12, 1981," and that Central Properties "is not entitled to the specific performance or other relief sought in the complaint." The circuit court also found that Central Properties' right of first refusal does not apply to the sale or transfer of the capital stock of Westside Utilities, Inc., and ruled that such stock could be acquired by Sand Cliffs under the terms of its option dated July 28, 1981. Central Properties challenges these rulings on this appeal.
It is well established, as appellant's brief states, that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds. Enid Corp. v. Mills, 101 So.2d 906 (Fla. 3d DCA 1958); 11 Fla.Jur.2d, Contracts, § 13. The record contains ample evidence to support the trial court's finding that there was no "meeting of the minds" of the parties in this case. Appellant has failed to demonstrate that the trial court *281 committed any error of law or abused its discretion in refusing to grant specific performance and other relief to the appellant. The correspondence and other evidence in the record clearly support a finding that the owners had not unconditionally manifested acceptance of a specific offer of purchase submitted by the Association, and all essential elements of the contract had not been finalized and agreed upon by these parties. The letters of May 8 and May 12, which Central Properties contends constitute the offer which it accepted, were obviously sent for the purpose of obtaining confirmation in writing that Central Properties would release its right of first refusal if Sand Cliffs and the owners of Westside Utilities should reach final agreement of the terms for a transfer of the water and sewer system to the Association. Once Central Properties indicated it would insist on exercising the right of first refusal, Sand Cliffs and Westside Utilities ceased further negotiations to finalize the terms for transferring the system to the Association.
A right of first refusal cannot ripen into a binding contract of purchase and sale until the owner of the property manifests an unconditional willingness to accept a third person's offer of purchase on specific terms and the holder of the right of first refusal tenders an unqualified acceptance of all terms of the offer without modification. Coastal Bay Golf Club, Inc. v. Holbein, 231 So.2d 854 (Fla. 3d DCA 1970). The cost and extent of repairs necessary to put the system into "good working order" was not described with any degree of specificity, but was both uncertain and uncircumscribed in amount; thus, essential elements of the agreement remained open for further negotiation and agreement by the parties. A contract so indefinite in its terms is not ordinarily susceptible of specific performance. See, Bay Club, Inc. v. Brickell Bay Club, Inc., 293 So.2d 137 (Fla. 3d DCA 1974); 29A Fla.Jur., Specific Performance, §§ 40-42.
We do find, however, that the trial court erred in ruling that the capital stock of Westside Utilities is not subject to the right of first refusal held by Central Properties and that it may be acquired by Sand Cliffs Owners Association under the terms of its option dated July 28, 1981, without regard to Central Properties' right. The word "system" has been defined as "a group of interacting, interrelated, or interdependent elements forming or regarded as forming a collective entity." The American Heritage Dictionary of the English Language, 1306 (W. Morris ed., 1979). We note that at the time the right of first refusal was given, the water and sewer system was owned by Westside, Inc., together with all other properties being developed by it. Hence, any sale or transfer of that system could be accomplished only by a sale of the physical properties constituting its component parts. But the property constituting the system was thereafter transferred by Westside to a new corporation created for the sole purpose of owning and operating the system. All components of the system now being segregated in a separate corporation which was also obligated to honor Central Properties' right of first refusal, any attempt by this new corporation or its owners to sell that system by either a sale of its components or transfer of all its capital stock should be construed as subject to the right of first refusal. Otherwise, the purpose and intent of the right of first refusal originally given to Central Properties could be circumvented quite easily. This is not to say that an individual shareholder of Westside Utilities could not sell or transfer his/her shares free of Central Properties' right of first refusal under circumstances where the purpose and result of the sale is not to convey complete ownership and control of the system to another entity in circumvention of Central Properties' right of first refusal. But we are not faced with that situation here, and our decision is not intended to reach that question.
We reverse the ruling of the court below that the capital stock of Westside Utilities is not covered by the right of first refusal and direct that the final judgment be so *282 modified. In all other respects, the final judgment is AFFIRMED.[1]
THOMPSON and WIGGINTON, JJ., concur.
NOTES
[1] The management agreement and lease agreement made by Westside Utilities and Sand Cliffs Owners Association on July 14, 1981, to facilitate the continued operation and improvement of the water and sewer system is not within the terms of the right of first refusal. The continued validity of these agreements is not affected by this decision.