620 So.2d 1068 (1993)
The GREATER NEW YORK CORP., etc., et al., Appellants,
v.
CENVILL MIAMI BEACH CORP., etc., et al., Appellees.
Nos. 92-1275, 92-1573.
District Court of Appeal of Florida, Third District.
June 22, 1993.
*1069 Buchanan, Ingersoll and Jeremy A. Koss, North Miami Beach, for appellants.
Brown, Clark & Walters and Glenn N. Siegel and Stuart Jay Levine, Sarasota, for appellees.
Before NESBITT, FERGUSON and COPE, JJ.
PER CURIAM.
In this consolidated appeal, The Greater New York Corporation (GNYC) appeals the final judgment entered in favor of Oceania Joint Venture (Oceania) in a suit filed by Oceania for breach of certain contracts for the sale of condominium units. Ronald Miceli appeals the trial court's award of attorneys fees and costs to Oceania. We affirm as to both.
Oceania was the developer of Oceania Tower I, a high rise condominium located in North Miami Beach. In March 1988, Oceania agreed to sell condominium unit OS-16 to Charles Trentacosta (contract I). Thereafter, Trentacosta assigned his right, title, and interest in contract I to Ronald Miceli, the president of GNYC. Pursuant to the terms of contract I, Miceli deposited $65,890 with Oceania's escrow agent. In January 1990, Oceania agreed to sell unit OS-11 to GNYC (contract II). Pursuant to the terms of contract II, GNYC deposited $57,000 with the escrow agent. Approximately two weeks later, Oceania and Miceli, as president of GNYC, executed an addendum to contract I which stated, "[i]t is hereby agreed and understood that purchaser [Miceli] shall take title in the name of The Greater New York Corporation."
Initially, a closing date was set for May 31, 1990. A dispute arose between the parties as to whether certain conditions for closing had been met. They attempted various settlement negotiations which, ultimately, broke down. According to GNYC, the parties had reached an oral agreement to terminate or modify contracts I and II, and had executed a termination/modification agreement. Oceania denied that such an agreement had been reached or executed. Thereafter, GNYC sued Oceania and the escrow agent for breach of the alleged agreement and for conversion of the deposits. Asserting, inter alia, that Miceli was an indispensable party to GNYC's suit, Oceania filed a third-party complaint against Miceli and counterclaimed against GNYC for breaches of the original purchase contracts, and sought a declaratory judgment as to 1) which party had breached the original purchase contracts; 2) which party was entitled to the deposit monies and liquidated damages; and 3) which party was entitled to attorneys fees and costs. After a bench trial, the court entered final judgment against GNYC, finding that all parties had agreed that any termination or modification agreement would be reduced to a writing and signed by the parties in order to be binding, and that there was no meeting of the minds as to termination or modification of the original purchase contracts. As to Oceania's counterclaim and third-party complaint, the court found that GNYC breached contract II, that both GNYC and Miceli breached contract I, and that Oceania was entitled to the deposit monies, liquidated damages, *1070 and attorneys fees and costs. Finally, the court determined that Oceania would recover $57,000 from GNYC and $65,890 from Miceli. Thereafter, the court entered a final judgment taxing attorneys fees and costs against GNYC and Miceli, jointly and severally.
It is well established that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds. Central Properties, Inc. v. Robbinson, 450 So.2d 277, 280 (Fla. 1st DCA 1984), quashed in part on other grounds, 468 So.2d 986 (Fla. 1985); Enid Corp. v. Mills, 101 So.2d 906 (Fla. 3d DCA 1958); see also Theocles v. Lytras, 518 So.2d 936 (Fla. 3d DCA 1987). Testimony at trial clearly showed that no agreement had been reached among the parties as to how accrued interest on the escrowed amounts was to be allocated after termination or modification of the original purchase contracts. As of December 1, 1990, the accrued interest was in excess of $30,000. Since there was no meeting of the minds as to this essential and substantial element of the alleged oral termination/modification agreement, it cannot be binding on the parties. Cohen v. Amerifirst Bank, 537 So.2d 1108, 1110 (Fla. 3d DCA), review denied, 547 So.2d 1209 (Fla. 1989).
Furthermore, we agree with the trial court that the testimony of the parties, their writings, and continuing negotiations clearly evinced the intent that any modification or termination of the original purchase contracts be in writing and signed by both parties in order to be binding. Here, the alleged agreement had not been properly executed by the parties and it must, therefore, fail.
Finally, the addendum to contract I referred to above, contained no terms or provisions indicating that Miceli was to be released from the contract, that he was assigning his rights under the contract to GNYC, or that GNYC was assuming obligations under the contract. Since the trial court correctly concluded that Miceli was liable under contract I, we find no error in its assessment of attorneys fees and costs against him.
Accordingly, the orders in this consolidated appeal are affirmed.