SLONE, Exr., Appellee,

v.

AEROSPACE DESIGN & FABRICATION, INC., Appellant.

ALPHACOR, INC. et al., Appellants,

v.

STRIPMATIC PRODUCTS, INC. et al., Appellees.

[Cite as *Slone v. Aerospace Design & Fabrication, Inc.* (1996), 111 Ohio App.3d 725.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 69301 and 69446.

Decided June 17, 1996.

726

*McDonald, Hopkins, Burke & Haber, Anthony J. DiVenere* and *Tyler L. Mathews,* for appellees Maxine G. Slone and Alphacor, Inc. et al.

*Graves & Horton, Donet D. Graves* and *Harold C. Reeder,* for appellant Aerospace Design and Fabrication, Inc.

*Arter & Hadden, William J. Muniak* and *Frank R. Osborne,* for appellees Stripmatic Products, Inc. et al.

DAVID T. MATIA, Presiding Judge.

This is a consolidated appeal arising out of two separate judgments from the Cuyahoga County Court of Common Pleas, case Nos. CV–263314 and CV–248462, respectively, dealing with the issue of whether a covenant not to compete terminates upon the death of the covenantor.

In appellate case No. 69301, Aerospace Design and Fabrication, Inc., defendant-appellant ("Aerospace Design"), challenges the judgment of the trial court granting the motion for judgment on the pleadings filed by Maxine G. Slone, executor of the estate of Henry D. Slone, deceased, plaintiff-appellee. In that case, the trial court determined that the covenant not to compete was not terminated by the death of Henry Slone, enabling Slone's estate to continue receiving payments under the covenant.

In appellate case No. 69446, Alphacor, Inc. et al., plaintiffs-appellants, challenge the trial court's granting of the motion for summary judgment filed by Stripmatic Products, Inc. et al., defendants-appellees ("Stripmatic Products"). In that case, the trial court determined that, since the covenant not to compete entered into between Theodore Lanza (Alphacor) and Stripmatic Products constituted a personal services contract, the death of Lanza terminated the covenant, precluding Lanza's estate from collecting further payments under the covenant.

## I.  THE FACTS RELATING TO APPELLATE CASE NO. 69301

On January 1, 1992, Henry D. Slone entered into a covenant not to compete with Aerospace Design, an aerospace engineering company. Slone agreed not to directly or indirectly engage in any business or assist in any business in competition with Aerospace Design anywhere in the United States, effective with the dates of the agreement and during the term of his employment with Aerospace Design. Slone agreed further that upon the termination of his officer and/or directorship positions with Aerospace Design and for an additional seventy-two months thereafter, he would not disclose or utilize any confidential information which he learned as a result of his association with Aerospace Design.

In exchange for this covenant executed by Slone, Aerospace Design agreed to pay Slone $3,000 per month beginning in February 1992 and continuing for seventy-two months after Slone terminated his position with Aerospace Design.

In accordance with the covenant not to compete, Aerospace Design made payments to Slone through and including May 1993. On May 28, 1993, Slone died. Soon after, Aerospace Design ceased making any further payments despite repeated demands for payment by his estate.

On December 27, 1993, Maxine G. Slone, executor of the estate of Henry Slone, plaintiff-appellee, initiated this action to recover the balance allegedly due under

the covenant not to compete. On June 19, 1995, the trial court granted the estate's motion for judgment on the pleadings and entered judgment accordingly.

On July 13, 1995, Aerospace Design filed a timely notice of appeal from the judgment of the trial court.

## II. THE FACTS RELATING TO APPELLATE CASE NO. 69446

On December 27, 1991, an asset-purchase agreement and bill of sale were executed between Stripmatic, Inc. (seller) and Stripmatic Products (buyer). The purchase price for the company was approximately $625,000, plus $100,000 in exchange for a consulting and noncompetition agreement. Payments due under the consulting and noncompetition agreement were payable over a five-year period.

The consulting agreement provided that, for a five-year period, Stripmatic Products would pay to Theodore Lanza and Alphacor, a company founded by Lanza to provide consulting services, the sum of $1,666.67 per month beginning March 1, 1992 for assisting in the management and operations of Stripmatic Products. The covenant not to compete provided that as long as Lanza did not compete directly or indirectly with the Stripmatic Products or solicit its customers or employees, Lanza would receive $3,750 per month beginning on March 1, 1992 and continuing for sixty months. On August 8, 1992, Lanza died and Stripmatic Products ceased making payments under the consulting agreement as well as the covenant not to compete.

On March 5, 1993, Alphacor and Mrs. Lanza, executor of the estate of Theodore Lanza, instituted a two-count breach of contract action against Stripmatic Products, for payments allegedly due under the consulting services contract and the covenant not to compete. On April 22, 1994, the trial court granted summary judgment in favor of Stripmatic Products, regarding payments due under the noncompetition agreement.

On February 22, 1995, a bench trial began regarding the consulting services contract. In a journal entry dated May 17, 1995, the trial court entered judgment in favor of Stripmatic Products, removing all liability under the consulting services contract.

On August 17, 1995, the estate and Alphacor, Inc. et al. filed a timely notice of appeal from the judgment of the trial court.

## III. ASSIGNMENTS OF ERROR IN APPELLATE CASE NO. 69301

Aerospace Design presents three assignments of error:

"The common pleas court erred in granting appellee judgment on the pleadings because the covenant not to compete was a personal covenant which terminated upon the death of the covenantor as a matter of law."

"The common pleas court erred in granting appellee judgment on the pleadings because the covenant not to compete terminated as a matter of law upon the death of the covenantor for a failure of consideration."

"The common pleas court erred in finding that under the covenant not to compete agreement ADF had promised to pay Slone $3,000.00 per month for a period of 22 months because the covenant did not provide such."

Having a common basis in both law and fact, these assignments of error will be considered together.

## A. THE ISSUE RAISED: WHETHER A COVENANT NOT TO COMPETE TERMINATES UPON THE DEATH OF THE COVENANTOR.

Aerospace Design argues through its assignments of error that the trial court erred in granting judgment on the pleadings. It is defendant-appellant's position that plaintiff was not entitled to judgment since the covenant not to compete constituted a personal service contract, which terminated upon the death of Henry Slone. Aerospace Design argues further that the trial court incorrectly interpreted the terms of the covenant not to compete.

Aerospace Design's argument has merit.

## B. STANDARD OF REVIEW FOR JUDGMENT ON THE PLEADINGS.

Civ.R. 12(C) provides that a party may move for judgment on the pleadings after the pleadings are closed and within such time as not to delay the trial. The standard of review a trial court must use in ruling upon a motion for judgment on the pleadings pursuant to Civ.R. 12(C) was set forth in *Case W. Res. Univ. v. Friedman* (1986), 33 Ohio App.3d 347, 348, 515 N.E.2d 1004, 1005:

"A motion for judgment on the pleadings is the same as a motion to dismiss filed after the pleadings are closed and raises only questions of law. The pleadings must be construed liberally and in a light most favorable to the party against whom the motion is made, and every reasonable inference in favor of the party against whom the motion is made should be indulged. *Vaught v. Vaught* (1981), 2 Ohio App.3d 264, 2 OBR 293, 441 N.E.2d 811; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113. The motion should be denied if it cannot be determined from the face of the pleadings that the pleading does not state a claim upon which relief can be granted. *Calhoun v. Supreme Court of Ohio* (1978), 61 Ohio App.2d 1, 15 O.O.3d 13, 399 N.E.2d 559."

■ Judgment on the pleadings may be granted where no material factual issue exists. However, it is axiomatic that a motion for judgment on the pleadings is restricted solely to the allegations contained in those pleadings. *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 623 N.E.2d 185. See, also, *Nelson v. Pleasant* (1991), 73 Ohio App.3d 479, 481, 597 N.E.2d 1137; *Barilatz v. Luke* (Dec. 7, 1995), Cuyahoga App. No. 68304, unreported, 1995 WL 723294.

## C. STANDARD OF REVIEW FOR COVENANT NOT TO COMPETE.

■ In Ohio, a covenant not to compete is valid and enforceable as long as the restrictions set forth in the covenant are reasonable. *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544. In determining the validity of a covenant or any agreement in restraint of trade, each case must be decided upon its own facts. *Extine v. Williamson Midwest* (1964), 176 Ohio St. 403, 27 O.O.2d 375, 200 N.E.2d 297.

■ The issue of whether a covenant not to compete terminates upon the death of the covenantor seems to be one of first impression in Ohio. Other jurisdictions have held that a covenant not to compete would be terminated upon the death of the covenantor. *Frantz v. Parke* (App.1986), 111 Idaho 1005, 1008, 729 P.2d 1068, 1071; *Bloom v. K & K Pipe & Supply Co.* (Fla.App.1980), 390 So.2d 770, 773. Professor Williston, in his well-known treatise on contracts, endorsed this view:

"It is obvious, however, that the contract would not be fully performed under the circumstances; it would merely have become certain that the contract would be performed since the promisor being dead could no longer break a negative promise." 3 S. Williston, Treatise on the Law of Contracts (W. Jaeger, 3 Ed.1960), Section 497.

The theory behind this position is that a covenant not to compete is personal in nature, and therefore the death of the covenantor must terminate it. *In re Internatl. Match Corp.* (D.C.N.Y.1937), 20 F.Supp. 420. Personal service contracts are contracts wherein the personal performance by the promisor is the essence and the duty imposed cannot be done as well by others as by the promisor. *Sanfillippo v. Oehler* (Mo.App.1993), 869 S.W.2d 159.

■ The issue of whether noncompetition agreements which are ancillary to the sale of a business constitute personal service contracts has also been addressed by other jurisdictions. The majority rule is that noncompetition agreements which are not part of larger agreements such as employment contracts containing affirmative promises of personal services are not personal service contracts. Where noncompetition agreements executed in conjunction with the sale of a business *are joined* with affirmative promises, the covenant not

to compete is a personal service contract which terminates upon the death of the covenantor. *Mail & Media, Inc. v. Rotenberry* (1994), 213 Ga.App. 826, 827, 446 S.E.2d 517; *Sanfillippo v. Oehler, supra; TPS Freight Distrib. v. Texas Commerce Bank–Dallas* (Tex.App.1990), 788 S.W.2d 456.

## D. THE COVENANT NOT TO COMPETE TERMINATED UPON THE DEATH OF THE COVENANTOR.

■ In the case *sub judice,* the covenant not to compete constituted a personal service contract and therefore terminated upon Slone's death. The covenant itself was signed only by Slone and a representative of Aerospace Design. Significantly, the covenant did not contain any language which could be construed to extend the rights and duties set forth in the covenant to Slone's executors, heirs or assigns.

More important, the covenant not to compete agreement provided that Slone would be paid $3,000 per month after terminating his relationship with Aerospace Design. These payments were in exchange for Slone's promise not to compete and would continue for seventy-two months. Under the circumstances, the covenant not to compete would not have been completed upon Slone's death but terminated, since the purpose of the contract was frustrated by Slone's death. *Collection & Investigation Bur. of Maryland, Inc. v. Linsley* (1977), 37 Md.App. 66, 72–73, 375 A.2d 47, 51.

Maxine Slone, executor of the estate, argues that the covenant not to compete agreement was fully performed upon Mr. Slone's death. However, the cases she relies upon in support of her argument are factually distinguishable from the case at bar since they dealt with noncompetition agreements executed in conjunction with the sale of a business. Although the executor maintains that the covenant not to compete at issue was executed in conjunction with the sale of Slone's stock in Aerospace Design, a review of the record from the trial court demonstrates that any sale of stock occurred after the covenant not to compete was executed and was a distinct transaction. Therefore, the cases relied upon by plaintiff-appellee are inapplicable.

## E. CONCLUSION.

For the foregoing reasons, the trial court erred in entering judgment on the pleadings in favor of the estate of Henry Slone, since the covenant not to compete in question terminated upon Slone's death. The judgment of the trial court in case No. 69301 is hereby vacated, and judgment is entered in favor of Aerospace Design.

## IV. FIRST ASSIGNMENT OF ERROR IN APPELLATE CASE NO. 69446

The first assignment of error of Alphacor and Susan Lanza, executor of the estate of Theodore Lanza, states:

"The trial court erred as a matter of law when it granted summary judgment in effect holding that a noncompetition agreement which did not affirmatively obligate the promisor to perform any services is a personal services contract that terminates upon the death of the promisor."

### A. THE ISSUE RAISED: WHETHER A COVENANT NOT TO COMPETE TERMINATES UPON THE DEATH OF THE COVENANTOR?

Plaintiffs argue that the trial court erred in granting the motion for summary judgment filed by Stripmatic Products. It is their position that the noncompetition agreement at issue was not a personal service contract and therefore was not terminated upon the death of Theodore Lanza.

The first assignment of error is not well taken.

### B. STANDARD OF REVIEW FOR SUMMARY JUDGMENT.

Civ.R. 56(C) provides that before summary judgment may be granted, the court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

A motion for summary judgment forces the nonmoving party to produce evidence on issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095 (syllabus). The nonmovant must also present specific facts and may not rely merely upon the pleadings or upon unsupported allegations. *Shaw v. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

This court's analysis of an appeal from a summary judgment is conducted under a *de novo* standard of review. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 768; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. No deference is given to the decision under review,

and this court applies the same test as the trial court. *Bank One of Portsmouth v. Weber* (Aug. 7, 1991), Scioto App. No. 1920, unreported, 1991 WL 156416.

## C. THE TRIAL COURT PROPERLY ENTERED SUMMARY JUDGMENT.

■ A review of the consulting and noncompetition agreement entered into between Alphacor, Inc. et al. and Stripmatic Products demonstrates that the noncompetition agreement was a contract for personal services. Section 8, paragraph i of the agreement provides:

"(i) *Personal Services.* This Agreement, in part, is based upon the personal services of Mr. Lanza and the duties and obligations of Mr. Lanza shall not be transferable or assignable in any manner by Mr. Lanza or his personal representative."

■ Pursuant to the authority previously cited by this court in this opinion, personal services contracts are terminated upon the death of the promisor. *Frantz v. Parke, supra; Bloom v. K & K Pipe & Supply, Co., supra;* and *Keller v. California Liquid Gas Corp.* (D.C.Wyo.1973), 363 F.Supp. 123. Accordingly, the trial court properly granted summary judgment in favor of Stripmatic Products, as the estate was not entitled to collect upon the terminated contract.

## D. CONCLUSION.

For the foregoing reasons, plaintiffs' first assignment of error is not well taken, as the covenant not to compete terminated upon the death of Theodore Lanza.

## V. SECOND ASSIGNMENT OF ERROR
## IN APPELLATE CASE NO. 69446

The second assignment of error states:

"The trial court's judgment is contrary to the express terms of the consulting agreement and, therefore, the trial court's judgment is contrary to law and against the manifest weight of the evidence."

## A. THE ISSUE RAISED: MANIFEST WEIGHT OF THE EVIDENCE.

■ Plaintiffs argue that the consulting agreement in question was breached by Stripmatic Products since the agreement was between it and Alphacor, not Theodore Lanza, and therefore was not terminated upon the death of Lanza. It is plaintiffs' position that the judgment of the trial court relating to the consulting agreement was against the manifest weight of the evidence.

The second assignment of error is not well taken.

## B. STANDARD OF REVIEW FOR MANIFEST WEIGHT.

An appellate court must adhere to the findings of the trial court unless the judgment or decision being appealed is manifestly against the weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

The Supreme Court of Ohio, in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, examined the issue of manifest weight and held:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* at syllabus; see, also, *Flynn v. Flynn* (1984), 15 Ohio App.3d 34, 15 OBR 57, 472 N.E.2d 388.

The underlying rationale for deferring to the findings of the trial court is that the trial court is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.

## C. THE JUDGMENT OF THE TRIAL COURT WAS NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

A review of the record from the trial court fails to support plaintiffs' contention that the judgment was against the manifest weight of the evidence. Initially, sufficient evidence was set forth to demonstrate that the consulting and noncompetition agreement was based in part upon the personal services of Lanza. Further evidence was presented to demonstrate that Alphacor was merely a corporate entity established by Lanza through which he would render the consulting services called for pursuant to the contract. Given the nature of the evidence admitted, the finder of fact was well within its prerogative in finding that the consultation agreement was in fact based upon the unique knowledge and expertise of Lanza and was therefore terminated upon his death. Since the judgment of the trial court was supported by some competent and credible evidence going to all the essential elements of the case, this court cannot now say that it was manifestly against the weight of the evidence. *Caresani v. Morgan Uniform Serv. of Am.* (Oct. 13, 1994), Cuyahoga App. No. 66239, unreported, 1994 WL 568340.

## D. CONCLUSION.

For the foregoing reasons, the trial court's judgment regarding the termination of the consultation agreement was not against the manifest weight of the evidence. Plaintiffs' second and final assignment of error is not well taken.

## VI.  SUMMARY

The judgment of the trial court in appellate case no. 69301 is hereby vacated, and judgment is entered in favor of Aerospace Design.

The judgment of the trial court in appellate case No. 69446 is hereby affirmed.

*Judgment accordingly.*

NAHRA and O'DONNELL, JJ., concur.