OPINION
Plaintiffs-appellants, James Arvai and Melissa Arvai, appeal the decision of the Preble County Court of Common Pleas finding that defendant-appellee, Littrell Brothers Co. ("Littrell Co."), did not breach a contract for the construction of a residential dwelling. The decision of the trial court is affirmed.
Littrell Co. is a construction company that builds residential homes. Appellants were friends with the president of Littrell Co., Dan Littrell ("Dan"). Appellants approached Dan in May 1996 regarding the possibility of Littrell Co. constructing a house for them. Appellants found they were unable to obtain a loan at that time and the project was postponed.
Appellants met with Dan on May 7, 1998 to once again discuss construction of a new house. A single page proposal was informally drafted without the aid of an attorney and signed on May 8, 1998. The proposal contained the lot number of the construction site, the square footage of the house and garage, the agreed cost of construction at $145,900, an alteration clause, and an estimated completion date.
The house was built and appellants, who currently reside there, have not complained about its overall quality. However, appellants argued that funds should have been left in the construction account because they acted as subcontractors for many of the jobs on the house without being paid by Littrell Co. Appellants argued that the construction contract was composed of the proposal, two estimated cost sheets, and an additional agreement not referred to in the contract.
Appellants maintained that under the agreement they were to act as subcontractor for the plumbing, electric, heating, excavation, painting, and staining jobs for the house. Appellants argued that as subcontractors, they were entitled to any surplus funds that were not expended up to the amounts listed on the estimated cost sheets for the plumbing, electric, heating, excavation, painting, and staining. Appellants argue those funds should have been left for them in the construction account. Appellants claim the reason the estimated cost sheets were drafted was to determine how much they would be paid, or how much would be left in the account, for acting as subcontractor for the various jobs. The estimated cost sheets projected the expense of each individual job that was required to complete the construction of the house. Appellants filed suit for $24,125.21 they claimed was due to them under the contract.
Littrell Co. argued that the excavation, painting, and staining work were solely appellants' responsibility as per their agreement. Littrell Co. maintained that even though the agreement only involved appellants acting as subcontractor for the plumbing, appellants were also compensated for the materials they purchased for the electric and heating systems. Littrell Co. paid appellants a total of $9,400 for these materials with three separate checks. Littrell Co. argued that the estimated cost sheets were not part of the contract, and were drafted to satisfy the mortgage lender. Furthermore, Littrell Co. argued that appellants requested several expensive extra changes to the house — changing the pitch of the roof, covering the entire exterior with brick instead of siding, and finishing the basement of the house — which exhausted any surplus that may have otherwise been left in the construction account for them. Therefore, Littrell Co. argued appellants were not entitled to any surplus funds for the particular jobs on which appellants acted as subcontractor.
Appellants filed a breach of contract action against Littrell Co. On October 20, 2000, the trial court determined that the estimated cost sheets were not part of the contract. The trial court also determined the extras provided by Littrell Co. were equal to or greater than appellants' potential entitlement under a quantum meruit claim. Therefore, the trial court held appellants were not entitled to judgment for breach of contract or quantum meruit. Appellants appeal raising a single assignment of error:
 THE TRIAL COURT DID ERROR [SIC] AND ABUSES ITS DESECRATION [SIC] IN [THAT] THE TRIAL COURT RENDERED ITS DECISION AGAINST THE MANIFEST WEIGHT OF CREDIBLE EVIDENCE.
Where some competent credible evidence going to every essential element of the case supports a judgment, a court of appeals will not reverse that judgment as being against the manifest weight of the evidence. Bell v.Perkins (1997), 124 Ohio App.3d 539, 542. The underlying rationale for deferring to the findings of the trial court is that the trial court is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Slone v. Aerospace Design Fabrication, Inc. (1996), 111 Ohio App.3d 725, 735.
Appellants argue that the contract consists of the signed proposal plus the two estimated cost sheets. They also argue the estimated cost sheets were drafted at the same time as the proposal. Appellants maintain the estimated cost sheets compliment and further explain the terms of the proposal. In support thereof, they point out that the totals on the estimated cost sheets match the total on the proposal.
Littrell Co. argues the contract only consists of the signed proposal. Littrell Co. maintains the estimated cost sheets cannot be considered part of the contract since they were drafted four days after the proposal was signed. Littrell Co. argues the estimated cost sheets were only prepared to satisfy appellants' bank. Therefore, Littrell Co. argues the estimated cost sheets are not part of its agreement with appellants.
Ike Kelley, Littrell Co.'s accountant, testified that he dated the estimated cost sheets on May 12, 1998 when he entered the figures on the sheets. Kelley testified that he was not present at the May 7, 1998 meeting when the discussions regarding the construction terms took place. Kelley testified that the estimated cost forms he used were faxed to him from Republic Savings Bank because the bank required them to process the mortgage. Appellants claimed the estimated cost sheets were drawn at the same time as the proposal and are the second and third pages of the contract. The estimated cost sheets are labeled "page 7" and "page 8." Appellants had no explanation for lack of sequential numbering of the pages and had no explanation for what pages two through six would contain. Kelley testified that, without input from appellants, he calculated and entered the amounts on the estimated cost sheets. Kelley's initials appear in the "estimated by" section. Kelley testified that he came up with the figures by breaking down the contract price, so the total would be the same as the mortgage amount appellants were seeking from Republic Savings. The determination that the estimated cost sheets were not part of the contract was supported by competent credible evidence. Therefore, the trial court did not err in finding that the parties' contract only consists of the one-page, signed proposal.
Appellants argue that Littrell Co. breached the contract when it provided extras that were not in writing. The one-page contract states that Littrell Co. proposes "to furnish labor and materials, complete in accordance with the above specifications for the sum" of $145,900. The only specifications stated in the contract are that "the house will consist of 1682 square feet of living space with 492 square feet garage and basement." There is no reference in the contract to certain blueprints or plans in order to obtain more detailed specifications. None of the specifications one would expect in a construction contract are present in the proposal, such as the type of furnace, fixtures, flooring, cabinets, lighting, foundation, siding, etc. The estimated cost sheets do not clarify the matter either, since no specifications are supplied in those documents.
Littrell Co. argues that the normal price of building this house would have been in excess of $170,000. Dan testified that taking their friendship and appellants' work as a subcontractor into consideration the price was lowered to $149,900. Dan and Kelley both testified to the standard practice of their company when determining the cost of constructing a house. The cost of constructing the living space is $65 per square foot, the garage cost is $22.50 per square foot, and the basement cost is $30 per square foot. Appellants' house contains 1,682 square feet of living space. The basement is 1,682 square feet, and the garage is 492 square feet. Littrell Co. estimated the cost of appellants' house to be $170,860. Littrell Co. argues that constructing appellants' house for $149,900 is their complete arrangement and no breach of contract occurred.
It must be presumed that the contractual language chosen by the contracting parties clearly expresses the intent of the parties. MoneyStation, Inc. v. Electronic Payment Serv., Inc. (1999), 136 Ohio App.3d 65,70. Accordingly, interpretation of clear and unambiguous contract terms is a matter of law and our standard of review is de novo. NationwideMut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. If the contract's terms are unambiguous, a court may not interpret the contract in a manner inconsistent with those terms. Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, 246.
The alteration clause in the proposal states, "any alteration or deviation from above specifications involving extra cost, will be executed only upon written agreement and will become an additionalcharge over and above the estimated figure." (Emphasis added.) The contract states appellants will receive a house consisting of 1,682 square feet of living space with a basement and 492 square feet of garage for $149,900. Appellants acknowledge that Littrell Co. was paid $149,900 for the house. Dan testified that the house as constructed consists of 1,682 square feet of living space with a basement and a 492 square foot garage.
Since the house conforms to the square footage specifications, there was no requirement for any deviations to be in writing because there was no additional charge over $149,900. Therefore, Littrell Co. did not breach the contract by providing appellants with extras that were not in writing.
Appellants argue there is no written proof of the extra work done to the house. Appellants, however, do not deny that the house as discussed at the time the proposal was signed only called for brick or stone on a small portion of the front porch. Appellants admit the house plans do not illustrate a brick ledge around the entire foundation. Appellants admit that the brick ledge is necessary to install brick around the entire house. Appellants admit that adding the brick ledge to the house would necessarily incur extra work on the foundation of the house. Appellants also admit the house as constructed has brick on all four exterior walls. By their own admissions, appellants prove that substantial extra work was done to the house.
We find that the trial court's determination that the contract did not include the estimated cost sheets was supported by competent credible evidence. Furthermore, we find there was no breach of that contract by providing extras that were not in writing. Therefore, the assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.