723 So.2d 838 (1998)
KIWANIS CLUB OF LITTLE HAVANA, INC., Appellant,
v.
Denise de KALAFE, Appellee.
No. 97-419.
District Court of Appeal of Florida, Third District.
October 14, 1998.
Rehearing Denied February 3, 1999.
*839 Cooney, Mattson, Lance, Blackburn, Richard & O'Conner; Hicks & Anderson and Gary Magnarini, Miami; Greenberg Traurig Hoffman Lipoff Rosen & Quentel and Elliot H. Scherker and Pedro J. Martinez-Fraga, Miami, for appellant.
Hardy, Bissett & Teichner and G. William Bissett, Miami, for appellee.
Before COPE, GERSTEN and SHEVIN, JJ.
SHEVIN, Judge.
Kiwanis Club of Little Havana, Inc. ["Kiwanis"], appeals a final judgment in favor of Denise de Kalafe for tortious interference with a contractual relationship and for defamation. We reverse.
Kiwanis, a non-profit service organization, has hosted the annual Calle Ocho Festival in Miami since the late 1970's. The Festival features several stages with various performers sponsored by different corporations and organizations. On September 30, 1988, Rafael Licea, Kiwanis's Executive Director, signed an agreement confirming Proctor & Gamble's ["P & G"] sponsorship of a supersite at the 1989 Festival. The agreement waived Notes A and B in Kiwanis's original proposal: Note A granted Kiwanis the power to veto any co-sponsor P & G might select and imposed surcharges for co-sponsors; Note B granted Kiwanis the right to veto any *840 performers the sponsor proposed. Realizing that he had waived Note B in error, Licea sent P & G a letter on October 4, explaining the error and expressing that Kiwanis was still reserving the right to veto the entertainment at the site. Thereafter, P & G forwarded its deposit to Kiwanis.
It is also important to note that the record reflects that Licea had received a memo from P & G's Miami marketing representative, Alicia Martinez-Fons, dated September 27, 1988, reflecting a waiver of both Note A and B, and that the following day, September 28, Licea returned the memo to Martinez-Fons with a handwritten correction that Kiwanis was not waiving Note B.
P & G contracted with Telemundo of Florida, Inc., to co-sponsor the supersite and arrange for the performers. On February 10, 1989, Telemundo hired de Kalafe to perform at the supersite. De Kalafe is a Brazilian-born singer and composer who recorded in Brazil and in Mexico prior to 1988.
On February 10, Licea met Telemundo's producer, Marie Peugot, at the supersite. Peugot showed Licea the list of performers. Upon noting de Kalafe's name on the list, Licea informed Peugot that de Kalafe would not be allowed to perform because it would pose a security risk. Licea also based his decision on the fact that Kiwanis had declined to invite de Kalafe to perform at the Festival some years earlier.[1]
On February 24, 1988, de Kalafe issued a press release to twenty-four media representatives regarding Kiwanis's decision to exclude her from the Festival. De Kalafe also held a press conference, four days later, to address what she felt were comments that she was sympathetic to the Castro regime. Kiwanis did not participate in the conference. Following the press conference, Leslie Pantin, Jr., as Kiwanis's representative, responded to questions from the press.
In her third amended complaint, de Kalafe sued Kiwanis and Pantin for tortious interference with her Telemundo contract; she also sued Kiwanis and Pantin for defamation based on assertions that Pantin called her a Castro sympathizer. After a trial marked by extreme contention and antagonism, the jury returned a verdict in de Kalafe's favor against Kiwanis on both claims but returned a verdict in Pantin's favor on the defamation claim. The jury verdict in de Kalafe's favor was subsequently remitted, and a final judgment in favor of de Kalafe and against Kiwanis was entered by the trial court in the amount of $2,130,000.
Kiwanis appeals claiming error: in the court's rulings excluding from evidence both the October 4 Licea letter to P & G and the September 28 Licea corrected memo to Martinez-Fons, P & G's marketing representative, showing that Licea, on behalf of Kiwanis, recanted from the Note B waiver in the September 30, 1988, agreement; in the court's ruling and instructing the jury three times during trial that the September 30 agreement could only be modified by another written agreement signed by both parties;[2] and in the court instructing the jury that as a matter of law the terms of the September 30 agreement governed resolution of the issue of whether Kiwanis had the right to veto artists.[3] We agree with Kiwanis's position that the cumulative effect of the several rulings, *841 compounded by the jury instruction, resulted in removing from the jury the issue of whether Kiwanis and P & G had modified the September 30 agreement to restore Kiwanis's ability to veto P & G's selection of performers.
Kiwanis's defense to de Kalafe's lawsuit was based on Kiwanis's agreement with P & G that it retained this veto power. As a threshold issue, we note that the court's statements to the jury were incorrect. A written contract can be modified by subsequent oral agreement between the parties or by the parties' course of dealing. Pathway Fin. v. Miami Int'l Realty Co., 588 So.2d 1000, 1005 (Fla. 3d DCA 1991); Flagship Nat'l Bank v. Gray Distrib. Sys., Inc., 485 So.2d 1336, 1340 (Fla. 3d DCA), review denied, 497 So.2d 1217 (Fla.1986); Pan Am. Eng'g Co., Inc. v. Poncho's Constr. Co., 387 So.2d 1052, 1053 (Fla. 5th DCA 1980); Wiener v. Wiener, 343 So.2d 1319, 1322 (Fla. 3d DCA 1977). Additionally, as de Kalafe is not a party to the Kiwanis-P & G agreement she has no standing to challenge the rights of the parties in the agreement. Genet Co. v. Annheuser-Busch, Inc., 498 So.2d 683, 685 (Fla. 3d DCA 1986); see Lugassy v. Independent Fire Ins. Co., 636 So.2d 1332, 1335 (Fla. 1994). Hence, the court's rulings during trial were erroneous statements of law.
The court's error was compounded by failing to permit the jury to consider whether the agreement was modified. Whether a written contract has been modified by subsequent oral agreement or by course of dealing is a question of fact for the jury. Halbert v. First Realty Serv., Inc., 504 So.2d 431 (Fla. 1st DCA 1987). The court's repeated erroneous instructions to the jury were tantamount to directing a verdict in de Kalafe's favor. See Gencorp, Inc. v. Wolfe, 481 So.2d 109, 112 (Fla. 1st DCA 1985), review denied, 491 So.2d 281 (Fla.1986). These errors prejudiced Kiwanis's case to the extent that we are required to reverse and remand for a new trial.
In our view, these errors on the intentional interference issues adversely affected the defense of the defamation claim because of the implication that Kiwanis had undertaken action adverse to de Kalafe without proper contractual authorization. Therefore, we must reverse for a new trial on both causes of action because of the pervasive prejudice to Kiwanis caused by the court's erroneous instructions.
In addition, Kiwanis, as an organization, cannot be vicariously liable for defamation if its officers or representatives are not liable for defamation.[4] "[A] principal cannot be held liable if the agent is exonerated." Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530, 532 (Fla.1985); see Walsingham v. Browning, 525 So.2d 996, 997-8 (Fla. 1st DCA 1988); Rety v. Green, 546 So.2d 410, 425-26 (Fla. 3d DCA), review denied, 553 So.2d 1165 (Fla.1989). The only logical interpretation of the jury verdict on the defamation claim is that the jury was swayed by the judge's rulings that Kiwanis had no right to exclude de Kalafe's performance. This result cannot be allowed to stand.
Because this case will be retried, we feel compelled to address the following important issues raised in this appeal. Kiwanis argues that the trial court erred in permitting de Kalafe's counsel to exercise peremptory challenges in a discriminatory manner to systematically exclude Hispanic jurors. Although the argument here is not dispositive because it was not properly preserved for appellate review, Milstein v. Mutual Sec. Life Ins. Co., 705 So.2d 639 (Fla. 3d DCA 1998), we are troubled that the trial court did *842 not follow the procedures outlined by the Florida Supreme Court in Melbourne v. State, 679 So.2d 759 (Fla.1996). The record demonstrates that despite Kiwanis's objections to de Kalafe's peremptory challenges, the court did not require de Kalafe's counsel to provide neutral reasons for the peremptory challenges and never ruled as to the genuineness of the explanations which de Kalafe volunteered. On retrial, the court must follow Melbourne. See Johnson v. State, 706 So.2d 401 (Fla. 3d DCA 1998).
Additionally, the court erred in excluding, on hearsay grounds, the periodical articles Kiwanis sought to introduce into evidence. The articles were not hearsay because they were not being "offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (1995). The remarks quoted in the articles were being offered to impeach de Kalafe's trial testimony that she had never made favorable remarks regarding the Cuban government. The articles were properly admissible for this purpose. § 90.614(2), Fla. Stat. (1995); see Hernandez v. Charles E. Virgin, M.D., P.A., 505 So.2d 1369 (Fla. 3d DCA 1987).
The last issue we address is the impropriety of de Kalafe's counsel's remarks during closing argument. During the course of closing argument, counsel repeatedly appealed to the jury's "community conscience," continuously analogized Kiwanis's exclusion of de Kalafe to political methods in Cuba and repeatedly appealed to the jury's political and social interests.[5] Florida courts have consistently rejected arguments that are nothing more than "impassioned and prejudicial pleas intended to evoke a sense of community law through common duty and expectation." Norman v. Gloria Farms, Inc., 668 So.2d 1016, 1021 (Fla. 4th DCA)(quoting S.H. Inv. & Dev. Corp. v. Kincaid, 495 So.2d 768 (Fla. 5th DCA 1986)), review denied, 680 So.2d 422 (Fla.1996). It is inappropriate for counsel to include appeals to "community conscience" and "civic responsibility" in closing argument. Superior Indus. Int'l, Inc. v. Faulk, 695 So.2d 376 (Fla. 5th DCA), review denied, 700 So.2d 685 (Fla.1997); see Blue Grass Shows, Inc. v. Collins, 614 So.2d 626, 627 (Fla. 1st DCA), review denied, 624 So.2d 264 (Fla.1993). On retrial, counsel should avoid these impermissible references to community conscience. "[T]he prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Superior Indus. Int'l, Inc., 695 So.2d at 380 (quoting Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993)). The comments in this case stray dangerously close to constituting reversible error.
It is unnecessary to reach the remaining issues raised by Kiwanis.
Judgment reversed; cause remanded for a new trial.
NOTES
[1] In 1984, Leslie Pantin, Jr., a Kiwanis member and one of the Festival organizers, received a proposal for de Kalafe to perform at the 1985 Calle Ocho Festival. Pantin declined the proposal because de Kalafe had performed at the 1981 Varadero Music Festival in Cuba.
[2] On three separate occasions, the court addressed the jury as follows:

1. "You can't modify a written instrument without a written instrument."
2. "I made a ruling that you cannot change a written instrument except by another written instrument."
3. "Nothing could change the terms of the written agreement except for another written agreement."
[3] The record demonstrates that there was a dispute over whether Kiwanis timely objected to this instruction proposed by de Kalafe. The trial court did not rule on whether the objection was timely; it did remark, however, that the court itself had not noticed the proposed jury instruction during the charge conference. It is unnecessary to address this issue because any further objection by Kiwanis, in the face of the court's multiple prior instructions and rulings, would have been of no avail. See Goff v. 392208 Ontario Ltd., 539 So.2d 1158 (Fla. 3d DCA 1989).
[4] De Kalafe asserted five counts in her third amended complaint against Kiwanis and various Kiwanis members. Count I asserted tortious interference against Kiwanis. Count II asserted defamation against Kiwanis, Emilio Cabrera and Pantin. Count IIIa breach of contract claim against Telemundowas settled prior to trial. As to count IV, which alleged a conspiracy between Pedro Menendez, Rafael Licea, Emilio Cabrera, and Pantin, the trial court entered summary judgment in Menendez's favor and de Kalafe declined to seek a verdict on this count against Pantin and Licea. De Kalafe dismissed count V, which alleged tortious interference against Menendez, Pantin, Cabrera and Licea. De Kalafe voluntarily dismissed her claims against Emilio Cabrera prior to trial. When the jury retired to deliberate, only two counts count I against Kiwanis, and count II, against Kiwanis and Pantinsurvived.
[5] Among the objectionable closing argument comments were the following:

"What if in the past somebody was a Democrat or Brazilian, where do you draw the line? Use reason. Look at the evidence and realize this type of politics is uncalled for and shouldn't be used."
"Eighth Street belongs to all of us. It is not their home and your verdict should reflect ... how you feel about this conduct."
"[P]eople of Cuba[] ... haven't been too lucky with politics, with Battista [sic] and now Castro. The last thing in the world is that we should bring the type of politics here that causes the problems to begin with...."