753 So.2d 581 (1999)
The FRANKLIN LIFE INSURANCE COMPANY, a corporation registered to do business in the State of Florida, Appellant/Cross-Appellee,
v.
Robert J. DAVY and Roland Rousselle, Cross-Appellants/Appellees,
v.
Robert Vega Murray, individually and as agent for the Franklin Life Insurance Company, Appellee.
No. 96-1762.
District Court of Appeal of Florida, First District.
December 22, 1999.
Rehearing Denied February 14, 2000.
*582 Thomas R. Julin, Edward M. Mullins and Denise Wallace of Steel Hector & Davis, Miami; R. Dennis Comfort, P.A., Gainesville, for Appellant/Cross-Appellee Franklin Life Insurance Company.
Phil C. Beverly, Jr. and Eric C. White, Gainesville, for Cross-Appellants/Appellees Robert J. Davy and Roland Rousselle.
Joel B. Toomey of Peek, Cobb, Edwards & Ashton, P.A., Jacksonville, for Appellee Robert Vega Murray.
VAN NORTWICK, J.
The Franklin Life Insurance Company appeals, and Robert J. Davy and Roland Rousselle cross-appeal, an order granting Franklin Life's motion for a new trial and/or a remittitur. For the reasons that follow, we affirm in part, reverse in part and remand.

Factual Background and Procedural History
Appellant, Franklin Life, is a life insurance company based in Springfield, Illinois, which underwrites life insurance policies sold to Floridians by agents who work on a commission basis. In late December 1990 or early January 1991, appellees Robert J. Davy, a Franklin Life agent based in Jacksonville, and Roland Rousselle, a Franklin Life agent based in the Gainesville area, contacted another Franklin Life agent, Robert Vega Murray, based in South Florida, for the purpose of gaining Murray's assistance in selling policies in the South Florida market. It was the position of Davy that he was interested in contacting only those policyholders who were considered so-called "orphans," that is, policyholders whose active agent (i.e., the agent who sold the policy) was no longer associated with Franklin Life.[1] In return for his assistance, Murray was to receive 25% of the commissions generated by Davy and Rousselle. Murray declined the offer.
Even without Murray's assistance, Davy and Rousselle were able to obtain a listing of all Franklin Life policyholders in South Florida, and they began acting upon this information, to the displeasure of Murray. The record reflects that, from motel rooms in the Miami area, Davy and Rousselle contacted by telephone numerous individuals who held whole life insurance policies from Franklin Life to inquire if these persons were interested in a review of their policy. Policyholders who were contacted and who testified at trial stated that appellees represented themselves as agents from the Franklin Life "home office" currently visiting the area; appellees, however, denied making such a representation. Out of approximately 60 such contacts, the *583 appellees were able to make 56 sales of new policies, which involved canceling an existing policy and replacing it with a new one. As a result, the appellees were able to realize a commission for themselves based on the new premiums, while policyholders obtained a new policy with substantially less cash value. On frequent occasion, appellees sold policies with so-called "vanishing premiums;" that is, the premium was taken out of the dividend paid by the policy or was taken from the accumulated cash value of the policy. Davy and Rousselle's sales techniques were described in the record as "rolling" or "churning." While appellees have maintained that they exercised the utmost ethical conduct while selling these polices, there was evidence at trial that policyholders did not fully understand the nature of these new policies in general and the premiums in particular.
After being contacted by several policyholders who had been recently sold new policies by Davy and Rousselle, Murray mailed a letter to 1,600 South Florida policyholders advising them that Davy and Rousselle were "unauthorized" to sell policies in South Florida. Murray also stated in the letter that
[t]heir history has been, once they have gone through an area, they leave and will not return to provide necessary service or answer questions that inevitably come up. Most agents like these are interested in only one thing: Commissions.
Davy and Rousselle alleged further that the defamatory content of the letter was repeated in a recorded message left by Murray on his office telephone.
During 1991, Franklin Life began receiving numerous complaints about the polices sold in South Florida by Davy and Rousselle. It conducted an audit, thereby freezing Davy's and Rousselle's commissions. In November 1991, Franklin Life severed its respective agency contracts with Davy and Rousselle. At about the same time, Franklin Life mailed a letter to the 1,600 policyholders in the Miami area who had received the letter from Murray. In this letter, Franklin Life apologized for any confusion caused by Murray's previous letter and explained that Davy and Rousselle were active agents with Franklin Life at the time of the Murray letter and were based in the Gainesville and Jacksonville areas, respectively, although they had maintained services contracts with a few clients in South Florida. Franklin Life also advised that it would be to the policyholder's advantage to work with the Franklin Life agent, Murray, already established in the area.
A month before his termination by Franklin Life, Davy filed a defamation claim against Murray and, vicariously, Franklin Life. Rousselle filed a similar action. The two causes were consolidated for trial. Davy and Rousselle subsequently filed amended complaints adding a claim of tortious interference with a contract against Murray and Franklin Life (Count II), a claim that Franklin Life wrongfully interfered with advantageous business relationships (Count III), and a claim that Franklin Life breached oral modifications to the written employment contracts by allowing other agents to contact their clients to replace polices sold by the plaintiffs (Count IV).
After a three week jury trial, and after Franklin Life's timely motion for a directed verdict was denied, the jury returned a verdict in favor of Murray and Franklin Life on the first three counts. As for Count IV, the jury found on the interrogatory verdict form as follows:
1a. Did Robert J. Davy and the Franklin
Life Insurance Company enter into an enforceable
modification of their written contract
as claimed by the Plaintiffs concerning a
Franklin's agent's rights to business sold by
that agent?
 Yes X No X 
 If your answer to question la is "Yes," then
answer question 2. If your answer to question
la is "No," then your verdict is for Defendant
Franklin Life Insurance Company on Plaintiff
Robert J. Davy's breach of contract claim.
Then foreperson must date and sign the verdict
and return it to the courtroom.
*584
lb. Did Roland Rousselle and the Franklin
Life Insurance Company enter into an enforceable
modification of their contract concerning
a Franklin agent's right to business
sold by that agent?
 Yes _____ No _____
 If your answer to question 1b is "Yes," then
answer question 2. If your answer to question
1b is "No," then your verdict is for Defendant
Franklin Life Insurance Company on Plaintiff
Roland Rousselle's breach of contract claim.
Then foreperson must date and sign the verdict
and return it to the courtroom.
2a. Did the Franklin Life Insurance Company
breach the unwritten modification to the
agency builder contract with Robert J. Davy?
 Yes X No _____
 If your answer to question 2a is "Yes," then
answer question 3. If your answer to question
2a is "No," then your verdict is for Defendant
Franklin Life Insurance Company on Plaintiff
Robert J. Davy's breach of contract claim.
2b. Did the Franklin Life Insurance Company
breach the unwritten modification to the
agency builder contract with Roland Rousselle?
 Yes ______ No ______
 If your answer to question 2b is "Yes," then
answer question 3. If your answer to question
2b is "No," then your verdict is for Defendant
Franklin Life Insurance Company on Plaintiff
Roland Rousselle's breach of contract claim.
3a. What are the total amount of Plaintiff
Robert J. Davy's damages as a result of
Franklin Life Insurance Company's breach of
contract?
Bob Davy $600,000
3b. What are the total amount of Plaintiff
Roland Rousselle's damages as a result of
Franklin Life Insurance Company's breach of
contract?
Roland Rousselle $600,000
Thereafter, Franklin Life filed a motion styled "Motion for Judgment in Accordance with the Verdict on Counts I, II, and III and Rousselle's Count IV and in Accordance with its Motion for Directed Verdict on Count IV or for New Trial or Remittitur on Count IV." In its accompanying memorandum of law, Franklin Life argued at length that a new trial on both liability and damages was required with respect to Count IV, because the verdict for that count was against the manifest weight of the evidence and the damages awarded were excessive, ten times that which had been sought. Franklin Life argued further that, in the absence of a directed verdict in its favor or the grant of a new trial on liability and damages on Count IV, the court should remit the damage award to $51,000 for each plaintiff.
After receiving extensive argument on Franklin Life's motion, the trial court entered an orderthe order under review granting a remittitur or a new trial on damages only pursuant to section 768.74, Florida Statutes (1995). In the order, the trial court states:
It is ordered and adjudged that the motion of The Franklin Life Insurance Company is granted to the extent it seeks a judgment in accordance with the verdict in favor of Franklin Life and Robert Vega Murray against counts I, II, and III of both plaintiffs' third amended complaints.... It is further ordered and adjudged, upon consideration of the factors set forth in section 768.74, Florida Statutes (1995), the amount awarded by the jury to each of the plaintiffs on count IV of the Third Amended Complaints is excessive. Therefore, Franklin Life's motion for remittitur on the damages awarded pursuant on [sic] count IV is granted to the extent that it seeks to limit the damages awarded to Robert Davy to the amount of $54,000 and to limit the damages awarded to Roland Rousselle to $53,000. Each plaintiff shall have 10 days from the date of this order to file and serve an election stating either his acceptance [of] the amount of the remittitur or his acceptance of a new trial on Count IV of the third amended complaint.
There is no dispute that the new trial was to be on Count IV damages only. Thereafter, the plaintiffs elected a new trial. Franklin Life filed an appeal, and the plaintiffs have cross-appealed.

Jurisdiction
While rule 9.130(a)(4), Florida Rules of Appellate Procedure, provides that an order granting a new trial may be *585 appealed as a final order, we had doubt as to our jurisdiction because Franklin Life appeared to be appealing an order as to which it was the prevailing party. See Crown Pontiac v. Bell, 547 So.2d 290 (Fla. 2d DCA 1989), cited with approval in Polk County v. Sofka, 702 So.2d 1243 (Fla.1997). Accordingly, sua sponte we issued a notice to show cause raising the appealability of this order. See Mapoles v. Wilson, 122 So.2d 249, 251 (Fla. 1st DCA 1960).
In Crown Pontiac, the defendant moved for a directed verdict (as did Franklin Life in the instant case), which was denied. A verdict was returned in favor of the plaintiffs, and thereafter, the defendant moved for a new trial and renewed its motion for a directed verdict. The renewed motion for a directed verdict was denied, but the lower court granted the motion for a new trial. The defendant appealed, and the reviewing court dismissed the appeal, explaining:
... it is clear that Crown [the defendant below and appellant] is merely attempting to use this appeal as a vehicle to challenge the trial court's decision denying Crown's motion for a directed verdict... We are not asked in this case simply to reverse a new trial order and to reinstate part or all of the jury's verdict. Instead, Crown asks that we reverse the denial of a directed verdict. Crown is appealing an order which it does not want us to reverse.
Crown Pontiac, 547 So.2d at 291.
Upon consideration of the response to the order to show cause and the replies thereto, we find Crown Pontiac distinguishable and conclude that the order on appeal is reviewable. It is undisputed that Franklin Life sought a new trial as to Count IV on both liability and damages. While Franklin Life does seek reversal of the order which granted, at least in part, its motion for a new trial, it cannot be said that Franklin Life is not aggrieved by the order which, given the appellees' election, in effect denied its motion for new trial on liability by limiting the new trial to damages only pursuant to section 768.74(4), Florida Statutes (1995). In contrast, in Crown Pontiac, the order granting a new trial gave the moving party all the relief requested and did not limit the scope of the trial. Compare Food Lion v. Jackson, 712 So.2d 800 (Fla. 5th DCA 1998).

The Denial of Directed Verdict
Franklin Life argues that the trial court erred in denying its motion for a directed verdict on Count IV. In this count Davy alleged:
58. During the course of said [written] contract between Plaintiff and COMPANY [i.e., Franklin Life], certain terms were modified by oral agreement or by course of performance and course of dealing. Each party accepted and acted on the modifications. Specifically, the contract was modified to provide i)that any person with whom Plaintiff placed an application for insurance through COMPANY became Plaintiff's exclusive client, and ii) that in the event of any questions, or complaints to COMPANY from any of Plaintiff's clients, COMPANY would notify Plaintiff so that Plaintiff could personally address the matter, and thereby preserve his commission income.
59. On or about August 1991 another agent of COMPANY, one Robert Vega Murray, mailed a letter to approximately 1600 policyholders of COMPANY, including clients of Plaintiff.... From on or about August 1991 through at least February 1992, COMPANY breached its contract with Plaintiff, as modified in the following ways:
i) Without any notice to Plaintiff, COMPANY allowed other agents to contact Plaintiffs clients and replace or exchange policies of insurance sold by Plaintiff; and
ii) Upon the policyholder's receipt of the [Murray] letter ... COMPANY thereafter received numerous inquiries and "complaints" concerning Plaintiff but rather allowed other *586 agents to contact Plaintiffs clients for follow-up, or alternatively, COMPANY advised the policyholders to contact agent MURRAY.
60. Defendant COMPANY further breached its contract with Plaintiff Davy by failing to pay renewal commissions following his termination as provided in the Agency Builder Contract. Plaintiff's renewal commissions, by contract, should have been reduced from 7.5% of the premium on which the commissions accrue to 6.5% of said premiums. Instead, Defendant COMPANY reduced renewal commissions payable by Davy by 6.5%, from 7.5% to 1% of the premium on which commissions accrued.
61. As a direct and proximate result of COMPANY's said breach, Plaintiff lost substantial commission income.
Count IV of Rousselle's third amended complaint is virtually identical to Davy's.
It is well-established that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract. Greater New York Corp. v. Cenvill Miami Beach Corp., 620 So.2d 1068, 1070 (Fla. 3d DCA 1993). Further, it is well-settled that a written contract may be modified by course of dealings, Kiwanis Club of Little Havana, Inc. v. de Kalafe, 723 So.2d 838 (Fla. 3d DCA 1998), and by "an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it...." Pathway Fin. v. Miami Int'l Realty Co., 588 So.2d 1000, 1005 (Fla. 3d DCA 1991), quoting King Partitions & Drywall, Inc. v. Donner Enters., Inc., 464 So.2d 715, 716 (Fla. 4th DCA 1985).
In its motion for a directed verdict as to Count IV, Franklin Life argued that the appellees failed to offer any evidence from which a reasonable jury could find that the contracts at issue were orally modified. The trial court denied the motion. After reviewing the evidence in a light most favorable to the appellees, Ticor Title Guar. Co. v. Harbin, 674 So.2d 781 (Fla. 1st DCA 1996), we find that this denial was in error.
At trial, appellees produced voluminous evidence regarding practices of Franklin Life which were not explicitly set forth in the respective agency contracts, such as the servicing of "orphaned policyholders" and the procurement of the highly coveted "status cards" which contained information about Franklin Life policyholders and from which future sales and renewals could be solicited. Nevertheless, the appellees have been unable to identify any evidence in the record, and our independent review has revealed none, demonstrating a modification of the agency contract, either by course of dealing or by oral amendment, by which (i) any person with whom either of the appellees placed an application for insurance through Franklin Life became that appellee's "exclusive client;" and (ii) in the event of any questions or complaints to Franklin Life, the appellees would be notified so that they could personally address the complaint the central allegations in Count IV. While appellees produced ample evidence that Franklin Life acted as if policyholders who obtained coverage through the appellees were not the exclusive clients of appellees, we have been directed to no record evidence which shows that such conduct on the part of Franklin Life was a breach of the provisions of a contract. Further, Davy and Rousselle have not identified evidence in the record demonstrating the amount of commissions lost by them as a result of the alleged breach.[2] Absent such *587 evidence, the contract claim stated in Count IV cannot be sustained. Compare Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168 (Fla. 4th DCA 1994). Accordingly, it was error to deny the motion for directed verdict as to Count IV and we reverse as to this issue.
In view of our disposition of this issue, it is unnecessary to reach the remaining issues raised by Franklin Life and the issues raised by Davy and Rousselle concerning the order granting a new trial or a remittitur.

Jury Instruction Regarding Apparent Agency
On cross-appeal, appellees argue that the lower court erred when instructing the jury on their claim that Franklin Life could be held liable on a theory of apparent agency. Over objection, the trial court instructed the jury in pertinent part as follows:
The next issue for your consideration was whether Robert Vega Murray was an apparent agent of Franklin Life Insurance Company and was acting within the scope of his apparent authority at the time and place of the incident complained of. An agent is a person who is employed to act for another, and whose actions are controlled by his employer or are subject to his employer's right of control. Robert Vega Murray was an apparent agent if Franklin Life Insurance Company by its words or conduct caused or allowed the Plaintiffs Robert J. Davy and Roland Rousselle to believe that Robert Vega Murray was an agent of and had the authority to act for Franklin Life Insurance Company and if Plaintiffs Robert J. Davy and Roland Rousselle justifiably relied upon that belief in dealing with Robert Vega Murray as the agent of the Franklin Life Insurance Company. A person is responsible for the negligence of his apparent agent occurring while the apparent agent is acting within the scope of his apparent authority.
Appellees argue that their beliefs concerning Murray's apparent agency relationship with Franklin Life is irrelevant with regard to their intentional tort claims. According to the appellees, it is the belief on the part of the recipients of Murray's letter as to Murray's relationship to Franklin Life that is the relevant consideration in their defamation and intentional interference claims.
The difficulty with this issue lies not so much with the instruction, though it is problematic, but with the assertion of vicarious liability on the part of Franklin Life for the alleged tortious interference by Murray. "Generally, a tortious interference claim `exists only against persons who are not parties to the contractual relationship.'" Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1099 (Fla. 1st DCA 1999). With respect to the claims of intentional interference with a contract (Count II) and intentional interference with a business relationship (Count III), there can be no question that Franklin Life was a party to the life insurance contracts at issue in the instant case. Given that undisputed fact, appellees failed to state a cause of action. See also Genet Co. v. Annheuser-Busch, Inc., 498 So.2d 683 (Fla. 3d DCA 1986); United of Omaha Life Ins. Co. v. Nob Hill Assoc., 450 So.2d 536 (Fla. 3d DCA), review dismissed, 458 So.2d 273 (Fla.1984); Buckner v. Lower Keys Hosp. Dist., 403 So.2d 1025, 1028 (Fla. 3d DCA 1981). Thus, any error with regard to the jury instruction on apparent agency was harmless with respect to Counts II and III, since these claims should not have been submitted to the jury in any event.
With respect to the defamation claim, both appellees alleged in their respective third amended complaints that the liability of Franklin Life is premised upon *588 Franklin Life's ratification of Murray's letter. Davy and Rousselle each alleged:
21. The oral and written defamatory publications complained of were communicated intentionally, maliciously, and without regard for their truth or falsity of their ultimate effect on the Plaintiff, and were not privileged.
22. Defendant MURRAY published the defamatory statements in the actual performance of his duties relative to the sale of life insurance for defendant COMPANY.
23. Defendant COMPANY failed to take any remedial measures concerning the defamatory publications complained of herein and that failure constitutes acquiescence and ratification of Defendant MURRAY's intentional tortious conduct. Thereafter Defendant COMPANY sent a letter to the approximately 1600 policyholders who received the letter referenced in paragraph 8, supra. That follow-up letter, a copy of which is attached hereto as Exhibit "B," further ratified Defendant MURRAY's intentional tortious conduct.
24. Defendant COMPANY further communicated orally with certain of the policyholders to whom Plaintiff had sold life insurance policies in Dade County and Broward County, Florida, in such a manner and fashion to ratify and approve the content of the letter referenced in Paragraph 8, supra.

25. The defamatory publications complained of herein are false and defamatory per se. Prior to the publication of the false and defamatory statements, the Plaintiff enjoyed a reputation for honesty, integrity, and trustworthiness in the communities where he sold life insurance for Defendant COMPANY.
26. As a direct and proximate result of Defendant MURRAY's defamatory publications and Defendant COMPANY's ratification of said tortious conduct, Plaintiff has since been regarded with scorn, contempt, ridicule, and disrespect in the insurance business community, which will continue for the foreseeable future.
27. As a direct and proximate result of Defendant MURRAY's defamatory publications and Defendant COMPANY's ratification of said tortious conduct, Plaintiff has lost substantial income via policy cancellations and further has lost the ability to earn money via insurance sales since his business reputation has been harmed.
28. As a direct and proximate result of Defendant MURRAY's defamatory publications and Defendant COMPANY's ratification of said tortious conduct, Plaintiff has suffered mental anguish and personal humiliation.
29. Based on the foregoing acts, and failure to act by Defendants, Plaintiff has suffered certain special damages which are as follows:
i. Lost commission on a policy sale to one James Snow in January 1992; and
ii. Lost business income from commissions on renewal premiums for the policies sold between April and August 1991 in the Dade County and Broward County area.
WHEREFORE, the Plaintiff demands judgment in excess of $15,000.00 for general damages, special damages, punitive damages and all other damages allowable by law, together with prejudgment interest, and the costs of this action, and Plaintiff further demands a trial by jury.
The evidence produced by appellees at trial conformed to that theory of the case. Therefore, given appellees' pleadings and the evidence produced by them, there was no basis for instructing the jury on the theory of apparent agency with respect to the defamation claim. See Llompart v. Lavecchia, 374 So.2d 77 (Fla. 3d DCA 1979)(jury is to be instructed on issues as formulated by the pleadings and substantiated by the evidence).

*589 Jury Instruction Regarding Defamation and Intentional Interference

Over the objection of the appellees, the jury was instructed that Franklin Life could only be held vicariously liable for the negligent acts of its actual or apparent agent, Murray. Injecting negligence law into a claim regarding an intentional tort is erroneous and misleading, argue appellees.
As to the defamation claim, it was appellees' theory of the case that Franklin Life's liability arose from its ratification of Murray's letter. The jury, however, expressly found that Franklin Life did not ratify Murray's letter. Thus, with respect to the defamation claim, we find any error in the instruction that Franklin Life could be held vicariously liable for the negligence of Murray to be harmless, because a vicarious liability instruction was not warranted. Smith v. Hugo, 714 So.2d 467 (Fla. 4th DCA 1998)(an instruction which was not necessary to resolve the issues of the case amounts to harmless error when given). As for the intentional interference claims, for the reasons explained above, these claims should not have reached the jury. Thus, any claim of error relating to the jury instruction as to such claim is moot.

Jury Instruction Regarding Qualified Privilege
Appellees also argue that the trial court erred in instructing the jury that, as a matter of law, Murray and Franklin Life possessed a qualified privilege to publish their letters. Franklin Life and Murray had pled qualified privilege as an affirmative defense to the defamation claim (Count I). Appellees assert, on the authority of Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 592 (1906), and Teare v. Local Union No. 295, 98 So.2d 79, 83 (Fla.1957), that such a defense can be defeated by proof of express malice or by proof that the publication was outside the scope of any legally recognizable privilege. Murray argues that the question of whether the qualified privilege was abused was not removed from the jury, but, even if it was, given the jury's verdict, this issue is moot. We agree.
In pertinent part, the verdict form stated as follows:
 VERDICT
 Section I
1. Did Defendant Robert Vega Murray's August
1, 1991 letter defame Plaintiffs, Robert J.
Davy and Roland Rousselle, by tending to
injure Davy and Rousselle in their business,
reputation, or occupation?
 Yes X No _____
If your answer to questions 1 is "Yes," answer
question 2. If your answer to question 1 is
"No" your verdict is for Defendants on Plaintiffs'
defamation claims. Do not answer any of
the other questions in Section I on this form.
Proceed to Section II.
2. Was Defendant Murray acting as Franklin
Life Insurance Company's actual agent when
he sent the letter?
 Yes _____ No X 
If your answer to question 2 is "Yes," answer
question 5. If your answer to question 2 is
"No," answer question 3.
3. Was Defendant Robert Vega Murray acting
with Franklin Life Insurance Company's
apparent authority in sending his August 1,
1991 letter to Franklin policyholder?
 Yes ______ No X 
If your answer to question 3 is "Yes," answer
question 5. If your answer to question 3 is
"No," answer to question 4.
4. Was Robert Vega Murray's act of sending
his August 1, 1991 letter ratified by Franklin
Life Insurance Company?
 Yes _____ No X 
If your answer to question 4 is "Yes," answer
question 5. If your answer to question 4 is
"No," your verdict is for Defendant Franklin
Life Insurance Company on Plaintiff's
defamation claims. Proceed to Section II.
5. Was the substance of Mr. Murray's August
1, 1991 letter substantially true and made
with good motives?
 Yes ______ No ______
If your answer to question 5 is "Yes," your
verdict is for Defendants. Proceed to Section
II. If your answer to question 5 is "No,"
answer question 6.
6. Was Robert Vega Murray privileged to
make the statements in his August 1, 1991
letter to Franklin Life Insurance Company
policyholders?
 Yes X No _____
If your answer to question 6 is "Yes," answer
question 7. If your answer to question 6 is
"No," your verdict is for Plaintiffs. Proceed
to question 8.
7. Did Robert Vega Murray make the statements
in his August 1, 1991 letter with improper
motives thereby abusing his privilege?
 Yes _____ No _____
If your answer to question 7 is "Yes," your
verdict is for Plaintiffs. Proceed to question
*590
8. If your answer to question 7 is "No," then
your verdict is for Defendants. Proceed to
Section II.
(Emphasis added).
The "x" in question 6 of Section I was placed there by the trial court when ruling on the qualified privilege issue. Thus, upon answering question 4 in the negative, the jury proceeded to section II of the verdict, the damages section, in accordance with the instructions given to them. Because the jury refused to attribute any liability to Franklin Life for defamation, the issue of whether Franklin Life possesses a valid defense to such liability is clearly moot.
Appellees have vehemently argued on appeal that the verdict form used was not their creation, albeit counsel for Davy typed it, but was instead a blend of standard jury instructions and special instructions, and that, therefore, any error attributable to the verdict cannot be considered invited error. Our reading of the record, however, fails to disclose that the language used with regard to questions two through four of Section I was used over the specific objection of the appellees. See Perry v. Allen, 720 So.2d 614 (Fla. 1st DCA 1998). Appellees, therefore, have failed to preserve this issue for appellate review.

Single Award For Defamation Claim
Finally, appellees argue that the lower court reversibly erred when it ruled, over appellees' objections, that, as to the defamation claim, the verdict form would not provide for the recovery of damages from Franklin Life and Murray separately. The trial court accepted Franklin Life's argument that such a double recovery was not appropriate given the theories of liability. On appeal, Davy and Rousselle contend that their defamation claim was tried under the theory that Franklin Life, as principal, could be both liable under the doctrine of respondeat superior or liable directly, by ratification, and thus, appellees assert that the verdict form should have provided for an award against Franklin Life separate from an award against Murray. The jury did not award any damages to Davy or Rousselle on the defamation claim.
Appellees have failed to demonstrate reversible error with regard to this issue. The verdict form asks for a finding of each plaintiff's economic and non-economic losses as a result of the defamation. No reference is made in this part of the verdict form to either defendant, and the jury was not instructed that the determination of damages for the defamation was dependent upon a finding of liability on the part of Franklin Life. Rather, the jury was instructed:
If you find that the Defendants Robert Vega Murray and the Franklin Life Insurance Companyif you find for the Defendants Robert Vega Murray and the Franklin Life Insurance Company on the Plaintiffs claim of defamation, you will not consider the matter of damages.
But if you find for Robert J. Davy and Roland Rousselle on their claim of defamation, you should award Davy and Rousselle an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Davy and Rousselle for such loss or damage as the greater weight of the evidence shows was caused by the publication complained of.
In short, we are not persuaded that the use of this form constituted reversible error.
Accordingly, the cause is AFFIRMED in part, REVERSED in part, and REMANDED for entry of a final judgment in accordance with this opinion.
JOANOS AND WOLF, JJ., CONCUR.
NOTES
[1] The policies offered by Franklin were assigned "servicing agents" besides active agents, and while often the servicing agent and the active agent were one in the same, in the case of orphan policies, there was no active agent listed. One of the contested issues below was whether the appellees approached only orphan policyholders.
[2] In Count IV, Davy and Rousselle did not seek damages for the loss of commissions that occurred as a result of the termination of their contracts by Franklin Life. Rather, appellees sought damages resulting from the breach of the alleged modifications to their respective written agency contracts; which breach they allege occurred when Franklin Life allowed other agents to contact appellees' clients and failed to refer complaints regarding policies sold by appellees to the appellees for resolution. The appellees did present evidence concerning appellees' respective loss of income following their termination, however, Franklin Life has not been sued for wrongful termination.