750 So.2d 774 (2000)
DANFORTH ORTHOPEDIC BRACE & LIMB, INC., Appellant,
v.
FLORIDA HEALTH CARE PLAN, INC., a Florida corporation, Appellee.
No. 5D99-159.
District Court of Appeal of Florida, Fifth District.
February 18, 2000.
*775 Darren J. Elkind of James, Zimmerman, Paul & Huddleson, LLP, Deltona, for Appellant.
No Appearance for Appellee.
COBB, J.
Appellant, Danforth Orthopedic Brace & Limb, Inc. (Danforth) provides orthopedic devices to the medical community. Appellee, Florida Health Care Plan, Inc. (FHCP) is an insurance company which provides health insurance benefits to its members. Danforth is an assignee of a contract that was entered into between FHCP and Ellison's Brace Center (Ellison's) for services and supplies, including artificial limbs and braces. The contract between FHCP and Ellison's was amended on several occasions with the last amendment, entitled "Addendum III," occurring on October 18, 1993. Article VI., General Provision, Section A., of Addendum III specifically provides:
The duration of this Agreement shall be for a period of two (2) years with automatic renewal for successive one (1) year periods; provided, however, if either party elects not to renew this Agreement, that party shall give written notice to the other party of same prior to the annual anniversary of this Agreement. For example, if prior to October 15, 1994, either the Provider or FHCP determines not to renew the Agreement and delivers written notice of same to the other party, the Agreement shall terminate as of October 14, 1995. If notice is not delivered before October 15, 1994, then the Agreement shall automatically extend to October 14, 1996. The foregoing example shall be applicable each year during the extended terms of this Agreement.
On August 9, 1995, FHCP notified Danforth of its intent not to automatically renew the contract upon conclusion of the current term on October 14, 1995. Clearly, FHCP's notice was contrary to the contract's terms in that the earliest that FHCP could have terminated the contract at that point in time would have been October 14, 1996. It is undisputed between the parties that the notice given by FHCP could not have terminated the contract as of October 14, 1995, although FHCP treated the contract as terminated on that date.
FHCP asserts that the contract with Danforth was not an exclusive contract; therefore, there could be no damages and no breach by their wrongful termination of contract. FHCP maintains that the termination clause exists in the contract simply to protect FHCP as to prices that Danforth could charge for the orthopedic devices and that Danforth had no contractual rights that required FHCP to purchase anything from them during the term of the contract. The trial court accepted this argument and entered a final summary judgment in favor of FHCP and against Danforth, from which the latter appeals.
It is undisputed that FHCP did not give notice of termination in accordance with the terms of Addendum III to the contract. To the extent that the termination provision is plain on its face, the contract is not ambiguous. However, the contract is ambiguous as to the purpose of the termination provision and whether an exclusive arrangement was intended.
Danforth maintains that although the contract does not expressly provide that the arrangement is exclusive, the parties' intent was that FHCP would purchase all of its devices from Danforth, as evidenced by the parties' course of dealing both prior and subsequent to the original contract. Danforth argues that it was not possible to give meaning to the termination provision of the contractrequiring FHCP to give notice of terminationwithout finding an obligation on FHCP to purchase from Danforth; if FHCP had no obligation to purchase from Danforth, FHCP could simply purchase the devices elsewhere without *776 having to inform Danforth. See, e.g., Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla.1979) ("A reasonable interpretation of a contract is preferred to an unreasonable one. And in the belief that the parties intended their agreement to be valid, a contract ought not be readily interpreted as ineffective.") (citations omitted); see also Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313 (Fla. 2d DCA 1963) ("All the various provisions of a contract must be so construed, if it can be reasonably done, as to give effect to each. Looking to the other provisions of a contract and to its general scope, if one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability.").
The original agreement has been modified several times by the parties. The initial contract, signed in 1989, provided that Ellison's Brace Center, Danforth's predecessor, was to provide services and supplies to FHCP's members "when prescribed by the member's physician and approved by the plan." The contract initially provided for a flat rate of $5500 per month, regardless of the number of devices ordered; however, a 1990 amendment changed the payment terms to six percent below the Medicare-approved rate for each device ordered. The original agreement certainly appears to have been an exclusive arrangement for Ellison's Brace Center to provide all of FHCP's requirements; it would make little sense for FHCP to purchase any devices from another provider when it could obtain all of them for the $5500 flat rate. Although the parties later changed to a per-device payment scheme, it is not clear that the parties intended to change the (apparently) exclusive nature of the arrangement via that amendment.
Danforth's proposed interpretation which gives effect to the termination provision and requires notice by FHCP is at least as reasonable as FHCP's construction of the contract. Because the contract is ambiguous, extrinsic evidence, including evidence of the parties' course of dealing, is admissible to determine the intention of the parties. See Lemon v. Aspen Emerald Lakes Assocs., Ltd., 446 So.2d 177 (Fla. 5th DCA 1984) ("It is a well-established legal principle that if a written contract is ambiguous so that the intent of the parties cannot be understood from an inspection of the instrument, extrinsic or parol evidence of the subject matter of the contract, of the relation of the parties, and of the circumstances surrounding them when they entered into the contract may be received in order to properly interpret the instrument."). In order for a contract to constitute an exclusive agreement to purchase or sell, it is not necessary that such terms be express. See Propane Indus., Inc. v. General Motors Corp., 429 F.Supp. 214 (W.D.Mo.1977) ("In construing a contract in which only the seller has agreed to sell, a court may find an implied reciprocal promise on the part of the buyer to purchase exclusively from the seller, at least when it is apparent that a binding contract was intended."); see also Universal Power Sys., Inc. v. Godfather's Pizza, Inc., 818 F.2d 667 (8th Cir.1987) (finding that "even if the instant contract was somewhat ambiguous as to exclusivity, the uncontroverted prior course of dealings" showed that for several years Universal had been Godfather's sole and exclusive supplier). Moreover, parties can modify the terms of their contract by subsequent conduct. Kiwanis Club of Little Havana, Inc. v. de Kalafe, 723 So.2d 838 (Fla. 3d DCA 1998); Pan American Eng'g Co., Inc. v. Poncho's Constr. Co., 387 So.2d 1052 (Fla. 5th DCA 1980); see also Lalow v. Codomo, 101 So.2d 390 (Fla.1958) ("[T]he actions of the parties may be considered as a means of determining the interpretation that they themselves have placed upon the contract.").
The factual issue of the parties' intent requires remand for further proceedings and determinations by the fact finder. This does not appear to be a case which lends itself to disposition by summary judgment. See, e.g., Fecteau v. Southeast *777 Bank, N.A., 585 So.2d 1005 (Fla. 4th DCA 1991) ("When there are two reasonable interpretations [of a contract], summary judgment is inappropriate because there is a genuine issue of material fact.").
REVERSED AND REMANDED.
DAUKSCH, J. and JACOBUS, B.W., Associate Judge, concur.