COPE, Judge.
Oceania Joint Venture, Castaways Management, Inc., and Castaways Partnership (collectively “Seller”)[1], appeal a final judgment awarding appellee Philip H. Meretsky and Trillium, Inc. the deposit Meretsky placed for purchase of a condominium unit. The question is whether, under the mortgage contingency in the purchase contract, Meret-sky was entitled to return of the deposit. We conclude that there must be further proceedings and remand for that purpose.
In 1989, Meretsky, a Canadian lawyer, entered into a contract to purchase a unit at the Oceania III Condominium, and placed a deposit of $55,400. By a document executed contemporaneously with the purchase contract, Meretsky was granted the right to take title in a corporation if Meretsky was a principal of the corporation.
The purchase agreement was contingent on Meretsky’s obtaining a mortgage commitment in the amount of $193,800. Upon being notified by the Seller that the condominium was nearing completion, Meretsky was obliged to make a mortgage application and provide all documents required by the lender. If Meretsky was rejected for financing, ultimately the Seller had to either make the loan itself or allow Meretsky to cancel the agreement and receive his deposit back.[2]
*883 Upon receiving notice from Seller in February 1991, Meretsky applied to Great Western Bank for a mortgage loan. Meretsky explained that he wanted to take title to the condominium in a corporation which he would own, whose sole asset would be the condominium unit. Great Western responded that they did not make corporate loans of that type. Great Western therefore declined to accept a corporate application, but did accept Meretsky’s application for a loan to him individually.
Meretsky also made inquiries at Carteret Mortgage Company, Coral Gables Federal Savings & Loan Association, and Flagler Federal Savings & Loan Association, in each instance asking whether the lender would make a loan to a corporation whose sole asset would be the condominium unit. Flagler Federal responded that it would not make the loan without a personal guarantee. The response of the other two lenders is not in the record. Meretsky did not submit an application to any of these three lenders.
In May 1991, Meretsky advised Seller that he had been unable to obtain mortgage financing. He asked whether Seller would provide a mortgage loan, and informed the Seller that he proposed to take title in the name of a corporation.
In June, Seller responded that Meretsky had not satisfied his obligations under the mortgage contingency. Seller stated that if Meretsky wished to take title in the name of a corporation, and the lender required Mer-etsky’s personal guarantee in order to make the loan, then Meretsky would be obliged to supply the personal guarantee. Seller took the position that if Meretsky had failed to obtain the corporate loan because he refused to supply a personal guarantee, then he had not discharged his obligations under the mortgage contingency and would either have to proceed to a closing on an ail cash basis or forfeit the deposit.
In July, Meretsky responded that the debate about corporate financing was beside the point, because he had made application at Great Western Bank for personal financing, and the request for personal financing had been refused. Meretsky reiterated that he was in compliance with the mortgage contingency, and again asked whether the Seller would make the mortgage loan. He advised that in the event the Seller decided to do so, Meretsky would take title in the name of Trillium, Inc.
Seller took the position that Meretsky was in default under the mortgage contingency, and was required to close on an all cash basis. Seller set a closing date, but Meret-sky declined to close. Seller kept the deposit.
Meretsky and Trillium brought suit in the trial court for return of the deposit. After a bench trial, the court ruled in favor of Meret-sky and Trillium. Seller has appealed.
The basis of the trial court ruling was its finding that “[t]he Purchaser attempted to secure financing pursuant to the mortgage contingency provision of the contract, paragraph 3.5, but was unsuccessful because lenders were not interested in granting a mortgage loan to a purchase^] in a corporate name of a residential condominium unit.” We must respectfully disagree that this finding shows sufficient compliance with the mortgage contingency.
In the purchase agreement Meretsky personally promised to buy the condominium unit and comply with the mortgage contingency. The parties’ agreement allowed Meretsky to take title in a corporation in which Meretsky was a principal. Nonetheless, Meretsky remained personally liable under the contract. See Greater New York Corp. v. Cenvill Miami Beach Corp., 620 So.2d 1068, 1069-70 (Fla. 3d DCA 1993).
Meretsky personally had promised to make application for, and diligently pursue, a mortgage loan. At least one of the lenders Meretsky contacted indicated that an application for a corporate mortgage loan could be *884 considered, provided that there was a personal guarantee on the mortgage. If Meret-sky wished to pursue the option to take title in a corporate name, it would have been necessary for him to make application for a corporate loan, to be guaranteed by Meret-sky personally. Since Meretsky did not do so, his attempt to obtain a corporate mortgage loan was insufficient compliance.
As Meretsky himself pointed out in his July 1991 letter, however, the other alternative under the mortgage contingency was for Meretsky to apply for a mortgage loan to him personally. The record is clear that Meretsky made such a personal application to Great Western Bank and that Great Western never issued a mortgage loan commitment.
What the present record does not resolve is the reason Great Western never issued the mortgage loan commitment. Some of the evidence suggests that Great Western asked Meretsky for additional financial information and turned him down when they did not receive it. Other evidence suggests that Great Western decided Meretsky could not qualify because of his financial position at the time, and that no loan commitment was issued because he had been rejected on the merits, rather than because his application was incomplete.
The trial court did not make a factual finding about the reason Meretsky failed to receive a mortgage commitment at Great Western. We remand for findings on this point. If Meretsky failed to provide Great Western with the information it needed to evaluate his application, then Meretsky did not sufficiently comply with the mortgage contingency, and the Seller is entitled to judgment. If on the other hand Meretsky provided the information requested by Great Western and was turned down because Great Western decided he did not qualify, then Meretsky satisfied the mortgage contingency and is entitled to judgment.[3]
Seller argues that it is entitled to win outright because Meretsky did not obtain a ruling on his application by Great Western within the 60-day time frame called for by the mortgage contingency.[4] The trial court rejected this argument and we agree. After giving Meretsky the initial notice in February 1991, Seller followed up at the end of March 1991 with a “Dear Purchaser” letter which gave a progress report regarding completion of the condominium project. The letter also stated, “If you have not applied for a mortgage, and you do not plan to close on a cash basis, please apply soon with a lender of your choice.” The wording of this letter would lull any reasonable Buyer into believing that the Seller did not intend to strictly enforce the 60-day time requirement. See Torres v. K-Site 500 Associates, 632 So.2d 110, 112 (Fla. 3d DCA 1994). Meretsky’s notice to Seller that he had been turned down for Mortgage financing was within sixty days of the “Dear Purchaser” letter. We agree with the trial court in its rejection of the untimeliness argument.
Meretsky makes an alternative argument for affirmance. He contends that he was entitled to void the purchase contract because of a rescission notice he sent the Seller in February 1991. The trial court rejected this contention and we agree.
The purchase agreement contained a clause which made the agreement voidable by the purchaser if there was any amendment “which materially alters or modifies the offering in any manner which is adverse to the Purchaser.”[5] In February 1991 Meretsky advised Seller that he wished to rescind the contract, claiming that there had been a material adverse change in the project because a new developer had been substituted for the original developer. The original developer was Cenvill Miami Beach Corp., which was also one of the joint venture partners. Cenvill encountered financial difficulty. Another of the joint venture partners, Castaways Management, Inc., acquired Cenvill’s interest in the joint venture, took over *885 construction and management, and completed the project. Seller rejected the notice of rescission, taking the position that under the circumstances, the substitution of a new developer was not a material adverse change.
At trial, and here, Meretsky urges that the substitution of Castaways Management, Inc. as the developer in place of Cenvill constituted a material adverse change in the condominium offering. It may be that the substitution of a new developer in place of the original developer is a material change, but we see no basis in this record on which to conclude that the change was adverse. By the substitution the project was brought to completion. We agree with the trial court that no basis for rescission has been shown.[6]
The final judgment is reversed and the cause remanded for further proceedings consistent herewith.

, Castaways Management, Inc. and Castaways Partnership are members of the Oceania Joint Venture.

. The full text of the mortgage contingency is as follows:
3,5 Mortgage Contingency. If indicated on Page 1 of this Agreement that Purchaser is utilising the proceeds of a mortgage loan to purchase the Unit, Purchaser shall make a full, complete and accurate mortgage application within ten (10) days after notification by Seller to obtain a mortgage for not more than the amount indicated at the prevailing rate of interest. Purchaser will complete and sign documents required by the Lender and tender the full mortgage application fee. Purchaser shall select a Lender able to process and close the mortgage in a timely fashion. Purchaser assumes full responsibility for the performance of the Lender and agrees that the Lender's failure to perform in a timely fashion shall not constitute a justifiable reason for delaying closing a5 required by this Agreement.
Purchaser shall, within five (5) days thereafter, notify Seller, in writing, of the name, address and phone number of the Lender, name of the loan officer, and the type of mortgage loan for which application was made.
The parties obligations under the Agreement are contingent upon the Purchaser receiving a written mortgage commitment from the Lender not later than sixty (60) days from the date of Seller’s notification ("Contingency Date”). Purchaser shall immediately notify Seller when a mortgage commitment has been obtained and to [sic] provide Seller with a copy of said commitment. In the event the Purchaser does not receive a written mortgage commitment by the Contingency Date, the Purchaser shall notify Seller, in writing, within three (3) days, that Purchaser has not received a mortgage commitment and provide Seller with a true copy of any Lender’s rejection letters. Upon receipt of notification, the Seller may elect: (1) to return all deposit monies without interest, and cancel this Agreement; or (2) to extend the Contingency Date to a further time certain; or (3) to take back a purchase money mortgage from the Purchaser on terms similar to those described above or as the parties may otherwise agree; or (4) extend the Contingency Date and direct Purchaser to apply to another Lender. If Seller does not extend the Contingency Date or agree to talce back the purchase money mortgage, then Purchaser, if Purchaser is not otherwise in default, may cancel this Agreement. If after the extended Contingency Date Purchaser has not obtained a mortgage commitment the Seller may take back a purchase money mortgage as stated above. If Seller declines to do so, and Purchase is not otherwise in default, this contingency shall be deemed unsatisfied.
If the Purchaser does not notify Seller by the Contingency Date that a mortgage commitment has not been received, this mortgage contingency will be null and void and of no further effect, and this Agreement shall remain in full force and effect, on a cash basis, without being subject to any mortgage contingency whatsoever.
*883 In the event Purchaser fails to diligently perform its obligations hereunder, Purchaser shall be in default and: (1) Seller may exercise its rights on account of such default; or (2) Seller may declare this Mortgage Contingency Rider null and void, and the Agreement shall remain in full force and effect, on a cash basis without any mortgage contingency.
(Emphasis added).

. The trial court may in its discretion reopen the evidentiary record and take further testimony if necessary or desirable.

. See supra note 2.

. This provision was required by section 718.503, Florida Statutes (1987).

. It also appears that the claim of the right to rescind was waived when Meretsky elected to proceed with his application for financing, including his request that the Seller provide financing to allow him to close.