Iqbal ASHRAF, a resident of the State of California, Plaintiff,

v.

SWIRE PACIFIC HOLDINGS, INC., a Delaware corporation, Defendant.

Case No. 08–23104–CIV.

United States District Court, S.D. Florida.

Feb. 27, 2009.

Kenneth Gale Hawkes, Kenneth Gale Hawkes, PA, Miami, FL, for Plaintiff.

Sandra J. Millor, Stephen J. Binhak, Greenberg Traurig, Miami, FL, for Defendant.

### *ORDER OF DISMISSAL*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss (D.E. # 7), filed December 5, 2008. Plaintiff responded on December 19, 2008 (D.E. # 8).

### I. BACKGROUND

Plaintiff Iqbal Ashraf ("Plaintiff") filed the instant action against Defendant Swire Pacific Holdings, Inc. ("Defendant") on November 7, 2008 (D.E. # 1). Plaintiff's Complaint alleges that, on April 1, 2005, he entered into a preconstruction purchase agreement ("the Agreement") with Defendant for the sale of a condominium at a purchase price of $1,575,000.00. (Compl. ¶ 8). From January 3, 2005 to September 7, 2005, Plaintiff deposited a total of $315,000.00 into escrow for the purchase of the condominium. (Compl. ¶ 9). The construction of the condominium was completed on September 30, 2008. Plaintiff contends that by the date of completion of construction, due to the substantial decrease in the real estate market, Plaintiff's condominium failed to appraise for the agreed purchase price. (Compl. ¶ 11). As a result, Plaintiff has been unable to secure financing for the condominium. (Compl. ¶ 11).

Plaintiff seeks rescission of the Agreement, return of his escrow deposits, and attorney's fees under various theories of contract voidance. In the instant Motion, Defendant moves this Court to dismiss Plaintiff's claims "because the clear and unambiguous language of the contract ne-

gates each of his claims." (Def's Mot. to Dismiss 2).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). To do so, the plaintiff must include in the complaint more than "a formulaic recitation of the elements of a cause of action." *Id.* at 1965. In deciding a motion to dismiss, the court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *See M.T.V. v. Dekalb County Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir.2006). Finally, "[i]n analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir.2004).

## III. ANALYSIS

### A. Statutory Voidance Under Florida Statutes §§ 718.503–718.504

Plaintiff's first claim is for statutory voidance of the purchase agreement based upon Defendant's alleged failure to provide "a copy of the prospectus or offering circular to Plaintiff as required by F.S. § 718.504, and to provide Plaintiff with the 'Frequently Asked Questions and Answers,' as required by F.S. § 718.504." (Compl. ¶ 18). In the Complaint, Plaintiff alleges that he "executed and returned the Condominium Document Receipt on or about April 11, 2005, without a clear understanding of its purpose, and disputes receipt of any Condominium Document (Prospectus) Book or 'Frequently Asked Questions & Answers Form.'" (Compl. ¶ 15).

■ Florida law requires that "[u]ntil such time as the developer has furnished the [required] documents ... to a person who has entered into a contract to purchase a residential unit ... the contract may be voided by that person...." Fla. Stat. § 718.503 (2008). By signing and acknowledging receipt of the required documents, however, Plaintiff has failed to state a claim for statutory voidance under Fla. Stat. § 718.503 (2008). Under Florida law, when a buyer "sign[s] a contract, acknowledge[s] receipt of all the documents and then later, ... sa[ys] he did not receive the documents," he is bound by the contract's terms and cannot rescind. *Chalfonte Dev. Corp. v. Rosewin Coats, Inc.*, 374 So.2d 618, 619 (Fla. 4th DCA 1979). Plaintiff admits to executing and returning to Defendant a document acknowledging receipt of the statutorily-required documents.

■ Plaintiff also alleges that he is entitled to void the Agreement due to a later amendment to the Agreement made by the Defendant. Plaintiff contends that "on or about October 27, 2008, Defendant mailed to Plaintiff a written Amendment to Declaration of Covenants, Restrictions and Easements for Brickell Key and a Notice advising him that 'if any of the changes materially alter or modify the offering in a manner which is adverse to you, you shall have a 15–day voidability period.'" (Compl. ¶ 20). Plaintiff alleges that he "responded within the 15–day voidability period and advised Defendant that the changes materially altered or modified the offering in a manner adverse to him and that he desired to and did void the Agreement." (Compl. ¶ 22). Plaintiff now asks the Court, based on the language of the Amendment, to enforce a voidance of the Parties' Agreement.

■ Plaintiff is unable to state a cause of action for statutory voidance under the October 27, 2008 Amendment because the Complaint does not state how the Amendment modified the original Agreement in a manner materially adverse to the Plaintiff. "The plain meaning of Florida Statute § 718.503 requires the rescinding party to prove that the change was both material and adverse to the property purchased." *In re Suncoast Towers East Assocs.*, 241 B.R. 476, 480 (Bankr.S.D.Fla.1999) (*citing Oceania Joint Venture v. Trillium, Inc.*, 681 So.2d 881, 884 (Fla. 3d DCA 1996)). In the Complaint, Plaintiff acknowledges that because he "never received the original offering documents, he had no way of determining whether the Amendment ... materially altered or modified the offering in a manner adverse to him, and assumed ... that it does." (Compl. ¶ 21). Even accepting all of the Complaint's allegations as true and construing them in the light most favorable to the Plaintiff, Plaintiff has failed to state a valid cause of action on this claim.

## B. Breach of Contract Based Upon Difference in Condominium Square Footage

■ The second count of Plaintiff's Complaint alleges that the condominium he agreed to purchase has a smaller square footage than what was originally represented to him prior to purchase. Plaintiff contends that, prior to selecting and entering into the Agreement to purchase the condominium, "Plaintiff was shown Defendant's floor plan for [the] Unit which asserted that the unit would contain 2,388 square feet of floor space." (Compl. ¶ 26). The completed unit, however, contains only 2,191 square feet of floor space. (Compl. ¶ 28). Plaintiff contends that because "[t]his contract deficiency cannot be remedied by the Defendant builder ... [he] is therefore entitled to rescind the Agreement and is entitled to a refund of all deposits...." (Compl. ¶¶ 31–32).

Plaintiff, however, has not provided sufficient facts in the Complaint to allege a cause of action for breach of contract. The Complaint is silent as to any indication of who made the square footage representations to the Plaintiff; when or where they were made; or any factual assertions as to the circumstances of the oral representation allegedly made. In addition, the written purchase agreement between Plaintiff and Defendant states, "[t]his Agreement is the entire contract for sale and purchase of the Unit.... Any current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Agreement are void and have no effect. Buyer has not relied on them." (Compl., Ex. A, ¶ 39). The Agreement also specifically contains language stating that the square footage of an apartment may vary:

> Lastly, Buyer understands and agrees that there are various methods for calculating the quoted square footage of a Unit, and that depending on the method of calculation, the quoted square footage of the Unit may vary by more than a nominal amount. Additionally, as a result of the in field construction and other permitted changes to the Unit, as more fully described in this Section, actual square footage of the Unit may also be affected.... Without limiting the generality of any other provision of this Agreement, *Seller does not make any representation or warranty as to the actual size, dimensions or square footage of the Unit, and Buyer hereby waives and expressly releases any such warranty.*

(Compl., Ex. A, ¶ 14) (emphasis added). Based upon the insufficient factual allegations in the Complaint combined with the

plain language of the Agreement, the Court finds that Plaintiff is unable to plead a sufficient cause of action for breach of contract based on the alleged square footage representation prior to execution of the Agreement.

## C. Impossibility of Performance as a Result of Real Estate Market

Plaintiff's third claim is that he is entitled to have the Agreement rescinded due to impossibility of performance. Plaintiff claims that because the "current and intervening real estate market crash was not, and could not have been, reasonably foreseen ... The purposes for which the contract was originally made have become impossible to perform through no fault of the Plaintiff...." (Compl. ¶¶ 42, 44).

 In Florida, the doctrine of impossibility of performance "refers to those factual situations, too numerous to catalog, where the purposes for which the contract was made, have, on one side, become impossible to perform." *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So.2d 614, 617 (Fla. 2d DCA 1965). "The doctrine of impossibility of performance should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express provision of the agreement." *Am. Aviation, Inc. v. Aero–Flight Serv., Inc.*, 712 So.2d 809, 810 (Fla. 4th DCA 1998).

 Plaintiff's claim that the real estate market crash could not have been foreseeable to the Parties at the signing of the Agreement does not support a sufficient claim of relief for impossibility of performance. Generally, the continuation of existing market conditions is ordinarily not sufficient to form the basis for an impossibility of performance defense. *See, e.g., Eastern Air Lines v. Gulf Oil Corp.*, 415 F.Supp. 429, 439 (S.D.Fla.1975) (finding an impracticability of performance de-

fense to be inappropriate where an oil company's costs increased dramatically due to an energy crisis); *see also* Restatement (Second) of Contracts § 261 cmt. b (1981) ("mere market shifts or financial inability do not usually effect discharge"). Fluctuating market conditions do not create the level of impossibility required for such a claim. "The fact that performance has become economically burdensome or unattractive is not sufficient for performance to be excused. We will not allow a party to a contract to escape a bad bargain merely because it is burdensome. [T]he buyer has a right to rely on the party to the contract ... regardless of what happens to the market price." *Eastern Air Lines*, 415 F.Supp. at 439 (*quoting Neal–Cooper Grain Co. v. Texas Gulf Sulphur Co.*, 508 F.2d 283, 293, 294 (7th Cir.1974) (internal quotation marks omitted)). Plaintiff's allegation that the subsequent real estate market crash made performance of the Parties' Agreement impossible is an improper claim for relief.

## D. Mistake of Fact as to the Agreement

 Plaintiff's final claim is that the Agreement should be rescinded due to mistake. Plaintiff contends that "the current and intervening market crash was a mistake" and as a result, "a mistake has occurred that goes to a material and substantial element of the Agreement; i.e., the purchase price, and he is entitled to have the Agreement rescinded due to that mistake." (Compl. ¶¶ 54, 56).

 Plaintiff, however, has failed to state a claim for relief through a misunderstanding of the law of mistake. In utilizing the equitable doctrine of mistake, a court looks at the conditions at the time the contract was formed:

An erroneous perception is not a mistake unless it relates to the facts as they

exist at the time the contract is made. A misprediction—a poor prediction of events that are expected to occur or circumstances that are expected to exist after the contract is made—is not a mistake. The law of mistake deals only with the risk of error relating to the factual basis of agreement—the state of affairs at the time of agreement. It does not *deal with the risk of error as to future matters.*

E. Allan Farnsworth, *Contracts* § 9.2, at 602 (4th ed.2004) (emphasis added); *see also Barnacle Bill's Seafood Galley, Inc. v. Ford,* 453 So.2d 165, 167 (Fla. 1st DCA 1984) ("by definition, the mutual mistake of fact must be of a fact existing at the time of the contract and not as to a future event.").

Plaintiff alleges that the mistake arose after the April 1, 2005 execution of the Purchase Agreement, when the real estate market crashed, and as a result "Plaintiff was unable to obtain financing that otherwise would have been able to secure at the time he entered into the Agreement in 2005." (Compl. ¶ 50). Plaintiff's claim for mistake does not properly state a cause of action.

## IV. CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Dismiss (D.E. # 7) be, and the same is hereby, GRANTED. The instant action is hereby DISMISSED WITH PREJUDICE. All other pending motions are DENIED as MOOT. The Clerk shall CLOSE this case.